**A.C. AUKERMAN COMPANY,**
Plaintiff–Appellant,

v.

**R.L. CHAIDES CONSTRUCTION CO., Defendant–Appellee.**

No. 90–1137.

United States Court of Appeals, Federal Circuit.

March 31, 1992.

Rehearing Denied May 19, 1992.

---

1022

Gerald P. Dodson, Townsend & Townsend, San Francisco, Cal., argued for plaintiff-appellant (Roger L. Cook and David L. Bilsker, on brief).

Thomas E. Schatzel, Law Offices of Thomas E. Schatzel, Santa Clara, Cal., argued for defendant-appellee.

Lawrence A. Hymo, Cushman, Darby & Cushman, Washington, D.C., argued for amicus curiae, Federal Circuit Bar Ass'n (William T. Bullinger, James D. Berquist, Lynn E. Eccleston, Kendrew H. Colton and Michael R. Dzwonczyk, Ronald Kananen, Marks, Murase & White, Evangeline W. Swift, President, Federal Circuit Bar Ass'n and George E. Hutchinson, Executive Director, Federal Circuit Bar Ass'n, on brief).

Jerry R. Selinger and Martha E. Waters, Vinson & Elkins, Dallas, Tex., were on the brief for amicus curiae, Datapoint Corp.

James F. McKeown, Evenson, Wands, Edwards, Lenahan & McKeown, Chair, Bar Ass'n of the District of Columbia, Washington, D.C., argued for amicus curiae, Bar Ass'n of the District of Columbia (Anthony W. Shaw and Teresa Stanek Rea, Burns, Doane, Swecker & Mathis, Arlington, Va., on the brief; and Herbert I. Cantor, Wegner, Cantor, Mueller & Player, Washington, D.C., of counsel, on brief).

Gaynell C. Methvin, Thomas L. Crisman and James D. Petruzzi, Johnson & Gibbs, P.C., Dallas, Tex., were on the brief for amicus curiae, Computer Entry Systems Corp. and Banctec, Inc.

Charles W. Bradley and Peter H. Priest, Davis, Hoxie, Faithful & Hapgood, New York City, were on the brief for amicus curiae, Lundy Electronics & Systems, Inc.

Maurice H. Klitzman and John J. Kelly, Washington, D.C., were on the brief for amicus curiae, Electronic Industries Ass'n.

Before NIES, Chief Judge, RICH, NEWMAN, ARCHER, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, and RADER, Circuit Judges.

NIES, Chief Judge.

This court reheard Appeal No. 90–1137 *in banc* to reconsider the principles of laches and equitable estoppel applicable in a patent infringement suit.[1] A.C. Aukerman Co. sued R.L. Chaides Construction Co. in the United States District Court for the Northern District of California for infringement of Aukerman's patents, U.S. Patent Nos. 3,793,133 ('133) and 4,014,633 ('633). *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, No. C–88–2074–SW (N.D.Cal. Sept. 1, 1989). The district court held on summary judgment that Aukerman was barred under principles of laches and equitable estoppel from maintaining the suit and Aukerman appeals. We conclude that the correct standards, which we have clarified herein, were not applied in the district court's grant of summary judgment. Moreover, upon application of the correct law, genuine issues of material fact arise with respect to the issues of laches and equitable estoppel. Accordingly, we reverse the court's ruling on the motion for summary judgment and remand for proceedings consistent with this opinion.

## I.

## BACKGROUND

The following facts are not disputed. Aukerman is the assignee of the '133 and '633 patents, relating to, respectively, a method and device for forming concrete highway barriers capable of separating highway surfaces of *different* elevations. The device allows a contractor to slip-form an asymmetrical barrier as the mold is moved down the highway, *i.e.*, to pour the barriers directly onto the highway without having to construct a mold. In settlement of litigation with Gomaco Corporation, a manufacturer of slip-forms which may be used to form regular or variable height barriers, Aukerman entered into an agreement in 1977 which made Gomaco a licensee under the patents and required Gomaco to notify Aukerman of all those who purchased Gomaco's adjustable slip-forms.

Upon notification that Chaides had purchased a slip-form from Gomaco, counsel for Aukerman advised Chaides by letter dated February 13, 1979, that use of the device raised "a question of infringement with respect to one or more of [Aukerman's patents-in-suit[2]]," and offered Chaides a license. Follow-on letters were sent by Aukerman's counsel to Chaides on March 16 and April 12, 1979. Chaides replied by telephone on April 17, 1979 but was unable to speak with counsel for Aukerman. By letter of April 24, 1979, Aukerman's counsel advised Chaides that Aukerman was seeking to enforce its patents against all infringers and that, even though Chaides might be among the smaller contractors, it had the same need for a license as larger firms. He advised further that Aukerman would waive liability for past infringement and infringement under existing contracts if Chaides took a license by June 1, 1979. Chaides responded in late April with a note handwritten on Aukerman's last letter stating that he felt any responsibility was Gomaco's and that, if

---

1. A decision of a panel of the court issued April 25, 1991, reported at 18 USPQ2d 1618, 1991 WL 62407, was vacated by *in banc* order on May 22, 1991, reported at 935 F.2d 1262, 18 USPQ2d 2056.

2. The letter also referred to a third patent pertaining to a gate structure on the slip-form. Per Aukerman, Chaides is no longer being charged with infringement of this patent.

Aukerman wished to sue Chaides "for $200–$300 a year," Aukerman should do so. There was no further correspondence or contact between the parties for more than eight years. In the interim, Chaides increased its business of forming asymmetrical highway barrier walls.[3] Sometime in the mid–80's, Chaides made a second adjustable mold for pouring step wall which Aukerman alleges is an infringement.

Apparently in 1987, one of Aukerman's licensees, Baumgartner, Inc., advised Aukerman that Chaides was a substantial competitor for pouring asymmetrical wall in California.[4] This advice prompted Aukerman's new counsel to send a letter to Chaides on October 22, 1987, referencing the earlier correspondence, advising that litigation against another company had been resolved, and threatening litigation unless Chaides executed the licenses previously sent within two weeks. Another period of silence followed. On August 2, 1988, Aukerman's counsel again wrote Chaides explaining more fully Aukerman's licensing proposal. When no reply was received, on October 26, 1988, Aukerman filed suit charging Chaides with infringing its '133 and '633 patents.

The district court granted summary judgment in favor of Chaides, holding that the doctrines of laches and estoppel barred Aukerman's claims for relief. The court, citing *Jamesbury Corp. v. Litton Indus. Prods.*, 839 F.2d 1544, 5 USPQ2d 1779 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988), ruled that Aukerman's delay of more than six years in suing Chaides shifted the burden to Aukerman to prove that its delay was reasonable and was not prejudicial to Chaides. The court rejected Aukerman's proffered excuse that it was engaged in other litigation because such litigation did not cover the period from February 22, 1979, to July 31, 1980, after it first contacted Chaides,

and in any event, Aukerman gave no notice to Chaides of any litigation during the period of delay up to October 1987. The court rejected Aukerman's further argument that the delay in suit was attributable to Chaides' representation of *de minimis* infringement. The court held that the evidence showed prejudice to Chaides in that (1) Chaides would have to pay a license fee on projects it had bid on without having allowed for this normal cost and (2) Chaides might have gone into bankruptcy had it known of its liability for past infringement. The court also held that Chaides' ability to defend itself would be prejudiced because necessary witnesses for Chaides' defense, including the inventor named in the subject patents, were unavailable and that memories of other witnesses, such as Mr. Aukerman's, had faded.

Respecting equitable estoppel, the court placed the burden on Chaides to establish this defense. The court then held that Aukerman's silence for nearly ten years after making an initial protest was sufficiently misleading to constitute bad faith and that Aukerman should have notified Chaides of the effect of the otherwise ambiguous June 1, 1979 deadline. The court went on to determine that Chaides had detrimentally relied on Aukerman's silence in deciding to forego bankruptcy and to bid low on highway contracts.

The court also found the defenses of laches and equitable estoppel were not defeated by reason of Chaides' "unclean hands." In particular, Aukerman had pointed to Chaides having made a copy of the Gomaco slip-form. The court stated Aukerman presented no evidence on "how the copy infringed the patent." Finally, it held that by the mid–80s, when this device was in use, Aukerman had already affirmatively misled Chaides.

For these reasons, the district court entered judgment for Chaides.

---

**3.** Chaides' sales records are a matter of public record inasmuch as its sales are only to the State of California. From 1980 to 1987, its annual sales of step wall rose from 3,125 feet to over 62,000 feet.

**4.** In his affidavit, Aukerman recalls "Bumgartner" [sic] stating, in 1988, that Chaides was a substantial competitor for pouring asymmetrical wall barriers in California. However, that date appears to be a year late, because Aukerman ended its silence in 1987 by sending a letter to Chaides.

## II.

## SUMMARY

The court has taken this case *in banc* to clarify and apply principles of laches and equitable estoppel which have been raised as defenses in this patent infringement suit.[5] In summary, for reasons to be more fully discussed, we hold with respect to laches:

1. Laches is cognizable under 35 U.S.C. § 282 (1988) as an equitable defense to a claim for patent infringement.

2. Where the defense of laches is established, the patentee's claim for damages prior to suit may be barred.

3. Two elements underlie the defense of laches: (a) the patentee's delay in bringing suit was unreasonable and inexcusable, and (b) the alleged infringer suffered material prejudice attributable to the delay. The district court should consider these factors and all of the evidence and other circumstances to determine whether equity should intercede to bar pre-filing damages.

4. A presumption of laches arises where a patentee delays bringing suit for more than six years after the date the patentee knew or should have known of the alleged infringer's activity.

5. A presumption has the effect of shifting the burden of going forward with evidence, not the burden of persuasion.

With respect to equitable estoppel against a patent infringement claim, we hold that:

1. Equitable estoppel is cognizable under 35 U.S.C. § 282 as an equitable defense to a claim for patent infringement.

2. Where an alleged infringer establishes the defense of equitable estoppel, the patentee's claim may be entirely barred.

3. Three elements must be established to bar a patentee's suit by reason of equitable estoppel:

a. The patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

b. The alleged infringer relies on that conduct.

c. Due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

4. No presumption is applicable to the defense of equitable estoppel.

■ As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge and the trial judge's decision is reviewed by this court under the abuse of discretion standard. We appreciate that the district court, in deciding the instant case, did not have the benefit of these statements of legal principles which differ in some respects from our precedent. We have no alternative, however, but to rule that, when these principles are applied to the record before us, the district court erred in granting summary judgment in favor of Chaides.

## III.

## LACHES

### A. *Viability of Laches Defense*

■ The Supreme Court has long recognized the defense of laches to a patent infringement action brought in equity. *See Lane & Bodley Co. v. Locke,* 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893); *Wollensak v. Reiher,* 115 U.S. 96, 5 S.Ct. 1137, 29 L.Ed. 350 (1885); *Mahn v. Harwood,* 112 U.S. 354, 5 S.Ct. 174, 28 L.Ed. 665 (1884). Laches may be defined generally as "slackness or carelessness toward duty or opportunity." *Webster's Third New International Dictionary* (1969). In a legal context, laches may be defined as the neglect

---

**5.** Briefs of amici curiae were filed by: the Federal Circuit Bar Association, Lundy Electronic Systems, Inc., Datapoint Corporation, the Bar Association of the District of Columbia, Electronic Industries Association, Computer Entry Systems Corporation, and Banctec, Inc.

or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar. *See* W.M. Tabb, *Reconsidering the Application of Laches in Environmental Litigation,* 14 Harv.Envtl.L.Rev. 377 n. 1 (1990). "[Laches] exacts of the plaintiff no more than fair dealing with his adversary." 5 J.N. Pomeroy, *Equity Jurisprudence* § 21, at 43 (Equitable Remedies Supp.1905). In refusing to enforce a patentee's claim of infringement, the Supreme Court invoked the maxim: "Courts of equity, it has often been said, will not assist one who has slept upon his rights, and shows no excuse for his laches in asserting them." *Lane & Bodley,* 150 U.S. at 201, 14 S.Ct. at 81. In *Environmental Defense Fund v. Alexander,* 614 F.2d 474 (5th Cir.), *cert. denied,* 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980), the court explained the rationale underlying the doctrine of laches in this apt manner:

> Laches is a clement doctrine. It assures that old grievances will some day be laid to rest, that litigation will be decided on the basis of evidence that remains reasonably accessible and that those against whom claims are presented will not be unduly prejudiced by delay in asserting them. Inevitably it means that some potentially meritorious demands will not be entertained. But there is justice too in an end to conflict and in the quiet of peace.

*Id.* at 481.

Extended to suits at law as well, laches became "part of the general body of rules governing relief in the federal court system." *Id.* at 478. As a defense to a claim of patent infringement, laches was well established at the time of recodification of the patent laws in 1952.[6] The commentary of one of the drafters of the revised patent statute confirms the intention to retain the defense of laches, specifically by 35 U.S.C. § 282:[7]

> The defenses which may be raised in an action involving the validity or infringement of a patent are[:] .... 'Noninfringement, absence of liability for infringement, or unenforceability' [35 U.S.C. § 282][;] ... this would include ... equitable defenses such as laches, estoppel and unclean hands.

P.J. Federico, *Commentary on the New Patent Law,* 35 U.S.C.A. 1, 55 (West 1954). In *J.P. Stevens & Co. v. Lex Tex Ltd. Inc.,* 747 F.2d 1553, 1561, 223 USPQ 1089, 1093 (Fed.Cir.1984), *cert. denied,* 474 U.S. 822, 106 S.Ct. 73, 88 L.Ed.2d 60 (1985), this court so interpreted section 282 stating:

> Paragraph (1) [of Section 282] includes "equitable defenses such as laches, estoppel and unclean hands."

Aukerman argues, nevertheless, that the defense of laches is inapplicable, as a matter of law, against a claim for damages in patent infringement suits. For this proposition, Aukerman first argues that recognition of laches as a defense conflicts with 35 U.S.C. § 286 (1988), which provides:

> Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

Per Aukerman, this provision is comparable to a statute of limitations which effectively preempts the laches defense.

---

6. *See Brennan v. Hawley Prods. Co.,* 182 F.2d 945 (7th Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 89, 95 L.Ed. 631 (1950); *Gillons v. Shell Co.,* 86 F.2d 600, 606–07, 32 USPQ 1, 7–8 (9th Cir.1936), *cert. denied,* 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937); *Baker v. Ford Motor Co.,* 69 F.2d 665 (3d Cir.1934); *Westco–Chippewa Pump Co. v. Delaware Elec. & Supply Co.,* 64 F.2d 185, 186–88 (3d Cir.1933); *Dwight & Lloyd Sintering Co. v. Greenawalt,* 27 F.2d 823, 827 (2d Cir.1928); *George J. Meyer Mfg. Co. v. Miller Mfg. Co.,* 24 F.2d 505, 506–08 (7th Cir.1928); *Ford v. Huff,* 296 F. 652 (5th Cir.), *cert. denied,* 266 U.S. 602, 45 S.Ct. 90, 69 L.Ed. 462 (1924); *Wilkie v. Manhattan Rubber Mfg. Co.,* 8 F.2d 785, 788 (D.N.J. 1925), *aff'd,* 14 F.2d 811 (3d Cir.1926). For a more comprehensive listing, *see* 4 *Walker, on Patents* § 880B (Deller's ed. 1937).

7. 35 U.S.C. § 282 reads in pertinent part:

> The following shall be defenses in any action involving the validity or infringement of a patent and shall be pleaded:
> (1) Noninfringement, absence of liability for infringement, or unenforceability....

■ Aukerman's argument is doubly flawed. First, Aukerman is in error in its position that, where an express statute of limitations applies against a claim, laches cannot apply *within* the limitation period. In other areas of our jurisdiction, laches is routinely applied within the prescribed statute of limitations period for bringing the claim. *See Cornetta v. United States*, 851 F.2d 1372 (Fed.Cir.1988) (in banc) (military pay); *accord Reconstruction Finance Corp. v. Harrisons & Crosfield Ltd.*, 204 F.2d 366 (2d Cir.), *cert. denied*, 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953) (breach of contract).

■ Second, with respect to section 286 specifically, a six-year limitation on damages, virtually identical to section 286, has been in the patent statute since 1897. As explained in *Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 347–48, 224 USPQ 863, 865–66 (Fed. Cir.1985), section 286 is not a statute of limitations in the sense of barring a suit for infringement.[8] Assuming a finding of liability, the effect of section 286 is to limit recovery to damages for infringing acts committed within six years of the date of the filing of the infringement action. One counts backwards from the date of the complaint to limit pre-filing damages arbitrarily. However, as stated in *Standard Oil*, with respect to the recovery of six years of damages:

> This assumes, of course, no other impediment to recovery or maintenance of the suit such as application of the doctrine of laches.

*Id.* at 348, 224 USPQ at 865.

We are unpersuaded that section 286 should be interpreted to preclude the defense of laches and provide, in effect, a guarantee of six years damages regardless of equitable considerations arising from delay in assertion of one's rights. Without exception, all circuits recognized laches as a defense to a charge of patent infringement despite the reenactment of the damages limitation in the 1952 statute. *See* 5 D.S. Chisum, *Patents* § 19.05[2] (and cases cited therein); Jean F. Rydstrom, Annotation, *Laches as Defense in Patent Infringement Suit*, 35 A.L.R. Fed. 551 (1977). This is not remarkable inasmuch as the statutory language of section 286 was virtually identical to a predecessor provision under which laches was also recognized.[9] *Dwight & Lloyd Sintering Co. v. Greenawalt*, 27 F.2d 823, 827 (2d Cir.1928) (L. Hand, J.) (recovery barred by thirteen-year delay for "even the earliest of the six years to which recovery is in any event limited.")

Even looked at afresh, we have no difficulty in reading section 286 harmoniously with the recognition under section 282 of the laches defense. By section 286, Congress imposed an *arbitrary* limitation on the period for which damages may be awarded on any claim for patent infringement. Laches, on the other hand, invokes the *discretionary* power of the district court to limit the defendant's liability for infringement by reason of the equities between the particular parties. *See J.P. Stevens*, 747 F.2d at 1561, 223 USPQ at 1093. Recognition of laches as a defense, thus, does not affect the general enforceability of the patent against others or the presumption of its validity under section 282. Nothing in section 286 suggests that Congress intended by reenactment of this damage limitation to eliminate the long recognized defense of laches or to take away a district court's equitable powers in connection with patent cases. An equitable de-

---

8. For the brief time of 1870–1874, the patent statute contained an actual statute of limitations which required "all actions for the infringement of patents shall be brought during the term for which letters patent shall be granted or extended, or within six years after the expiration thereof." 16 Stat. 206, § 55 (July 8, 1870). *See Campbell v. Haverhill*, 155 U.S. 610, 613, 15 S.Ct. 217, 218, 39 L.Ed. 280 (1895).

9. As early as 1897, a predecessor of section 286, 29 Stat. 694, provided:

> But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action, and this provision shall apply to existing causes of action.

fense under section 282 and the arbitrary limitation of section 286 do not conflict.

■ Aukerman also argues that laches, by reason of being an equitable defense, may be applied only to monetary awards resulting from an equitable accounting, not to legal claims for damages. Inasmuch as the patent statute was amended in 1946 to eliminate the remedy of an equitable accounting, per Aukerman, this change also eliminated the basis for a laches defense. We disagree.

For many decades, parties have generally been allowed to plead equitable defenses at law without having to resort to a separate bill in equity. In 1915, Congress enacted 38 Stat. 956, codified as 28 U.S.C. § 398, which authorized such pleadings. As of that time, laches became available to bar legal relief, including patent damage actions. *See Banker v. Ford Motor Co.,* 69 F.2d 665, 666 (3d Cir.1934); *accord Ford v. Huff,* 296 F. 652, 658 (5th Cir.1924). Section 398 was then superseded in 1937 by Fed.R.Civ.P. 2 which merged legal and equitable claims into a single civil action. *See* Fed.R.Civ.P. 2 Advisory Committee note 1; 2 J.W. Moore, *Moore's Federal Practice* ¶ 2.05[2], at 2–33 n. 49 (2d ed. 1991). Section 398 was later repealed as being obsolete in light of Fed.R.Civ.P. 2. *Id.* The right to interpose the equitable defense of laches in patent litigation, therefore, remains as viable today as it was when section 398 was first enacted in 1915.[10]

In any event, the right to interpose the equitable defense of laches in a civil action is specifically recognized in Fed.R.Civ.P. 8(c). *Accord Technitrol, Inc. v. NCR Corp.,* 513 F.2d 1130 (7th Cir.1975) (adopting, *inter alia,* Part II of district court opinion in *Technitrol, Inc. v. Memorex Corp.,* 376 F.Supp. 828, 830–32 (N.D.Ill. 1974)). Hence, we are unpersuaded that the technical distinction between application of laches against legal damages and an

equitable accounting which Aukerman asks us to draw should be made.

■ Finally, Aukerman asserts that it is improper to utilize laches as a defense to completely bar recovery of prefiling damages flowing from a continuing tort, such as patent infringement. We understand Aukerman to be arguing that, because each act of infringement is deemed a separate claim, the laches defense, like a statute of limitations, must be established separately with respect to each such act. *Compare Union Planters Nat'l Bank v. Markowitz,* 468 F.Supp. 529, 532 (W.D.Tenn.1979) (six-year limitation runs separately on each note of indebtedness for the amount), *with Hart v. United States,* 910 F.2d 815 (Fed. Cir.1990) (six-year limitation does not run separately on claim to monthly annuity).

Aukerman's theory conflicts with the precedent of the Supreme Court in which laches has been applied against continuing torts as in *Lane & Bodley,* 150 U.S. 193, 14 S.Ct. 78 (patent infringement) and *Menendez v. Holt,* 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888) (trademark infringement). In those cases, as well as in our precedent and that of other circuits, laches has been viewed as a single defense to a continuing tort up to the time of suit, not a series of individual defenses which must be proved as to each act of infringement, at least with respect to infringing acts of the same nature. *See, A.C. Aukerman Co. v. Miller Formless Co.,* 693 F.2d 697, 700 n. 4, 216 USPQ 863, 865 (7th Cir.1982). To that extent, continuing tortious acts may be deemed to constitute a unitary claim. *Cf. Young Eng'rs v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1316, 219 USPQ 1142, 1152 (Fed.Cir.1983) (claim preclusion applies against same type of infringing acts).

In any event, Aukerman's argument, which focuses on acts of the defendant, distorts the basic concept of laches. Laches focuses on the dilatory conduct of the

---

**10.** Even before these provisions, an equitable defense could be interjected into a claim at law by way of a bill in equity to enjoin the prosecution of an adversary's suit at law until the equitable defense was decided. *See Liberty Oil Co.*

*v. Condon Nat'l Bank,* 260 U.S. 235, 243, 43 S.Ct. 118, 121, 67 L.Ed. 232 (1922). Thus, equitable defenses have not been as unavailable against a suit at law as Aukerman would have it.

patentee and the prejudice which the patentee's delay has caused. As stated in *Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946).

> A federal court ... may dismiss a suit where the plaintiffs' "lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence ..." *Benedict v. City of New York*, 250 U.S. 321, 328 [39 S.Ct. 476, 478, 63 L.Ed. 1005 (1919)].

Thus, we reaffirm the ruling in *Leinoff v. Louis Milona & Sons*, 726 F.2d 734, 220 USPQ 845 (Fed.Cir.1984) and our subsequent precedent[11] that laches is available as a defense to a suit for patent infringement. As explained in *Leinoff:*

> Since there is no statute from which to determine the timeliness of an infringement action, vis-a-vis the patentee's first knowledge of infringement, courts use the equitable doctrine of laches.

726 F.2d at 741, 220 USPQ at 850.

### B. *Laches Factors*

The application of the defense of laches is committed to the sound discretion of the district court. *Jamesbury*, 839 F.2d at 1551, 5 USPQ2d at 1785; *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576, 1 USPQ2d 1210, 1216–17 (Fed.Cir.1986); *Leinoff,* 726 F.2d at 741, 220 USPQ at 850; *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325, 206 USPQ 577, 586 (5th Cir.), *cert. denied*, 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). With its origins in equity, a determination of laches is not made upon the application of "mechanical rules." *Holmberg*, 327 U.S. at 396, 66 S.Ct. at 584. The defense, being personal to the particular party and equitable in nature, must have flexibility in its application. *Id.* A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties. *See Bott*, 807 F.2d at 1576, 1 USPQ2d at 1216–17.

It is, however, well settled that, to invoke the laches defense, a defendant has the burden to prove two factors:

> 1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and

> 2. the delay operated to the prejudice or injury of the defendant.

*Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1461, 16 USPQ2d 1055, 1057 (Fed.Cir.1990); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 1572, 4 USPQ2d 1939, 1940 (Fed.Cir. 1987) and cases cited therein.

The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances. *Galliher v. Cadwell*, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738 (1892); *Rosemount, Inc. v. Beckman Instruments*, 727 F.2d 1540, 1550, 221 USPQ 1, 10 (Fed.Cir.1984) (patentee denied damages because of a three-year delay); *see also Meyers*, 912 F.2d at 1462–63, 16 USPQ2d at 1057–58; *Advanced Hydraulics v. Otis Elevator Co.*, 525 F.2d 477, 481 n. 2, 186 USPQ 1, 4 n. 2 (7th Cir.1975). The period of delay is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit. However, the period does not begin prior to issuance of the patent, *Bott*, 807 F.2d at 1575, 1 USPQ2d at 1216; *Studiengesellschaft Kohle*, 616 F.2d at 1326, 206 USPQ at 587.

---

11. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 876–79, 20 USPQ2d 1045, 1050–52 (Fed.Cir.1991); *Adelberg Lab. v. Miles, Inc.*, 921 F.2d 1267, 17 USPQ2d 1111 (Fed.Cir.1990); *Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 16 USPQ2d 1055 (Fed.Cir. 1990); *Sun Studs, Inc. v. ATA Equip. Leasing*, 872 F.2d 978, 993, 10 USPQ2d 1338, 1350–51 (Fed.Cir.1989); *Jamesbury Corp. v. Litton Indus. Prods.*, 839 F.2d 1544, 5 USPQ2d 1779 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988); *Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570, 4 USPQ2d 1939 (Fed.Cir. 1987); *Bott v. Four Star Corp.*, 807 F.2d 1567, 1 USPQ2d 1210 (Fed.Cir.1986); *Mainland Indus. v. Standal's Patents Ltd.*, 799 F.2d 746, 230 USPQ 772 (Fed.Cir.1986).

Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary. *Cornetta*, 851 F.2d at 1378. Evidentiary, or "defense" prejudice, may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts. *Barrois v. Nelda Faye, Inc.*, 597 F.2d 881, 885 (5th Cir.1979); *Smith v. Sinclair Ref. Co.*, 257 F.2d 328, 330, 118 USPQ 183, 184 (2d Cir. 1958); *Gillons v. Shell Co.*, 86 F.2d 600, 608–09, 32 USPQ 1, 9–10 (9th Cir.1936), *cert. denied*, 302 U.S. 689, 58 S.Ct. 9, 82 L.Ed. 532 (1937); VI *Restatement Law of Torts* § 939 (1936).

Economic prejudice may arise where a defendant and possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit. *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d at 701, 216 USPQ at 866; *American Home Prods. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1124, 179 USPQ 196, 198–99 (6th Cir.1973) (opinion by Judge Stevens, later Justice Stevens), *cert. denied*, 414 U.S. 1158, 94 S.Ct. 917, 39 L.Ed.2d 110 (1974); *Yates v. Smith*, 271 F. 27, 31 (D.N.J.1920). Such damages or monetary losses are not merely those attributable to a finding of liability for infringement. *Jenn–Air Corp. v. Penn Ventilator Co.*, 464 F.2d 48, 49–50, 174 USPQ 419, 420 (3d Cir.1972). Economic prejudice would then arise in every suit. *See Cornetta*, 851 F.2d at 1380–82. The courts must look for a *change* in the economic position of the alleged infringer during the period of delay. *Lake Caryonah Improvement Assoc. v. Pulte Home Corp.*, 903 F.2d 505, 510 (7th Cir.1990). On the other hand, this does not mean that a patentee may intentionally lie silently in wait watching damages escalate, *Dwight & Lloyd Sintering*, 27 F.2d at 837, particularly where an infringer, if he had had notice, could have switched to a noninfringing product. *Rome Grader & Mach. v. J.D. Adams Mfg. Co.*, 135 F.2d 617, 619, 57

USPQ 442, 444 (7th Cir.1943). Indeed, economic prejudice is not a simple concept but rather is likely to be a slippery issue to resolve. *See* Chisum, § 19.05[2][c].

A court must also consider and weigh any justification offered by the plaintiff for its delay. Excuses which have been recognized in some instances, and we do not mean this list to be exhaustive, include: other litigation (*Jamesbury*, 839 F.2d at 1552–53, 5 USPQ2d at 1785–86; *Hottel Corp.*, 833 F.2d at 1572–73, 4 USPQ2d at 1940–41; *American Home Prods.*, 483 F.2d at 1123, 179 USPQ at 197–98); negotiations with the accused (*Baker Mfg. Co. v. Whitewater Mfg. Co.*, 430 F.2d 1008, 1013–14, 166 USPQ 463, 466–67 (7th Cir.1970), *cert. denied*, 401 U.S. 956, 91 S.Ct. 978, 28 L.Ed.2d 240 (1971)); possibly poverty and illness under limited circumstances (*Frank F. Smith Hardware Co. v. S.H. Pomeroy Co.*, 299 F. 544, 546–47 (2d Cir.1924)); wartime conditions (*Armstrong v. Motorola, Inc.*, 374 F.2d 764, 769, 152 USPQ 535, 538 (7th Cir.), *cert. denied*, 389 U.S. 830, 88 S.Ct. 95, 19 L.Ed.2d 88 (1967)); extent of infringement (*Tripp v. United States*, 406 F.2d 1066, 1071, 186 Ct.Cl. 872, 157 USPQ 90, 94 (1968); *but see Baker Mfg. Co.*, 430 F.2d at 1014–15, 166 USPQ at 467–68); and dispute over ownership of the patent (*Maloney–Crawford Tank Corp. v. Rocky Mountain Natural Gas Co.*, 494 F.2d 401, 403, 181 USPQ 617, 618 (10th Cir.1974)). The equities may or may not require that the plaintiff communicate its reasons for delay to the defendant. *See generally* Chisum § 19.05[2][b].

A patentee may also defeat a laches defense if the infringer "has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor." *Bott*, 807 F.2d at 1576, 1 USPQ2d at 1216–17. *See TWM Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 349, 201 USPQ 433, 435 (6th Cir.1979) and cases therein. Conscious copying may be such a factor weighing against the defendant, whereas ignorance or a good faith belief in the merits of a defense may tilt matters in its favor.

In the simplest or purest form of laches, there need be no direct contact between the plaintiff and the defendant from the time the plaintiff becomes aware of its claim until the suit. *See Barrois,* 597 F.2d at 884 [5th Cir.]; *Safeway Stores v. Safeway Quality Foods,* 433 F.2d 99, 103, 166 USPQ 112, 115 (7th Cir.1970) ("For sixteen years [plaintiff] did nothing to put the defendants upon notice of its claims.") In other instances, the plaintiff may make an objection to the defendant and then do nothing more for years. *Leinoff,* 726 F.2d at 742, 220 USPQ at 850–51. In *Lane & Bodley,* laches was found where the plaintiff gave no notice of infringement and delayed suit in order to continue receiving a salary from the defendant. Where there has been contact or a relationship between the parties during the delay period which may give rise to an inference that the plaintiff has abandoned its claim against the defendant, the facts may lend themselves to analysis under principles of equitable estoppel, as well as laches (see Section IV *infra*). However, the two defenses are not the same. As we have indicated, laches focuses on the reasonableness of the plaintiff's delay in suit. As will become evident, equitable estoppel focuses on what the defendant has been led to reasonably believe from the plaintiff's conduct. Thus, for laches, the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability must be weighed to determine whether the patentee dealt unfairly with the alleged infringer by not promptly bringing suit. In sum, a district court must weigh all pertinent facts and equities in making a decision on the laches defense.

### C. *Presumption of Laches*

As this court explained in *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1581, 223 USPQ 465, 476 (Fed.Cir. 1984), presumptions, whether created by statute or by judicial ruling, "arise out of considerations of fairness, public policy, and probability." *Cornetta,* 851 F.2d at 1380. *See also,* 10 *Moore's* § 301.02, at III–14.

Historically, a statute of limitations applied only to claims at law, not to a companion equitable claim. Laches was the only basis for time-barring an equitable claim. *Russell v. Todd,* 309 U.S. 280, 288 n. 1, 60 S.Ct. 527, 531 n. 1, 84 L.Ed. 754 (1940). However, where the reasons for repose of the claim were equally applicable to remedies at law and equity, the equity courts became inclined to "borrow" the time period from the statute of limitations and apply it presumptively against the equitable claim. *Id.* at 288, 60 S.Ct. at 531; *Pepper v. Truitt,* 158 F.2d 246, 251 (10th Cir.1946); Note, *Developments in the Law—Statutes of Limitations,* 63 Harv. L.Rev. 1177, 1184 (1950). This practice of creating rebuttable presumptions using a statute of limitations as a guide was extended to situations where the legal and equitable claims were not the same but only analogous.[12] D.B. Dobbs, *Handbook on the Law of Remedies* § 2.3, at 43–44 (1973).

Courts faced with patent infringement actions "borrowed" the six-year damage limitation period in the patent statute now set out in section 286, as the time period for giving rise to a rebuttable presumption of laches. The six years in the statute, as indicated, begins with the date of suit and counts backward. The six years for laches begins with a patentee's knowledge of infringement and counts for-

---

**12.** Laches presumptions based on "borrowed" statutes of limitations are widely recognized, for example: wrongful death for injuries at sea, *Public Adm'r of the County of N.Y. v. Angela Compania, Naviera,* 592 F.2d 58, 64 (2d Cir.), *cert. dismissed,* 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979); a claim to Selective Service Act reemployment rights, *Leonick v. Jones & Laughlin Steel,* 258 F.2d 48, 50 (2d Cir.1958); a claim for restoration of seniority and back pay, *Gruca v. United States Steel,* 495 F.2d 1252, 1258–59 (3d Cir.1974); an action to vacate a land condemnation decree, *Henry v. United States,* 46 F.2d 640, 642 (3d Cir.1931); a tort action by a passenger against a steamship company, *McGrath v. Panama R.R. Co.,* 298 F. 303, 304 (5th Cir.1924); a tort claim by longshoremen against a steamship line, *Morales v. Moore-McCormack Lines, Inc.,* 208 F.2d 218, 220 (5th Cir.1953); and an action to cancel the sale of a mining claim, *Kelley v. Boettcher,* 85 F. 55, 62 (8th Cir.1898).

ward. Thus, the two periods in real time may be completely unrelated. They have in common only the same number of years. The "borrowing" of section 286's time period for the use of laches defense was, thus, an extension or modification of the "borrowing" concept. Nevertheless, the section 286 time period was embraced by virtually all circuits prior to the creation of this court as a reasonable period for creation of a presumption of laches in patent cases. *Olympia Werke Aktiengesellschaft v. General Elec. Co.,* 712 F.2d 74, 76–77, 219 USPQ 107, 109 (4th Cir.1983); *Potter Instrument Co. v. Storage Technology Corp.,* 641 F.2d 190, 191, 211 USPQ 493, 494 (4th Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 130, 70 L.Ed.2d 110 (1981); *Watkins v. Northwestern Ohio Tractor Pullers Ass'n,* 630 F.2d 1155, 1159, 208 USPQ 545, 548–49 (6th Cir.1980); *Studiengesellschaft Kohle,* 616 F.2d at 1326, 206 USPQ at 587 [5th Cir.] (noting a growing unanimity among the circuits on laches presumption from six-year delay); *General Elec. Co. v. Sciaky Bros.,* 304 F.2d 724, 727, 134 USPQ 55, 57 (6th Cir.1962); *Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258, 1263, 216 USPQ 658, 661 (7th Cir. 1982); *Gillons,* 86 F.2d at 607, 32 USPQ at 8 [9th Cir.]; *Maloney–Crawford Tank Corp.,* 494 F.2d at 403–04, 181 USPQ at 618 [10th Cir.]; *United Drug Co. v. Ireland Candy Co.,* 51 F.2d 226, 232 (8th Cir.1931), *cert. denied,* 284 U.S. 683, 52 S.Ct. 200, 76 L.Ed. 577 (1932).

The presumption of laches arising from a more than six-year delay in filing suit is consonant with the mainstream of the law. The length of the time period—six years— is reasonable compared to the presumptions respecting laches in other situations, which may be as short as one year. *McMahon v. Pan American World Airways,* 297 F.2d 268, 270 (5th Cir.1962) (libel claim). Also the presumption provides a yardstick for reaching comparable results in comparable circumstances rather than leaving the matter without any guidelines to a district court's exercise of discretion. In any event, this court adopted a laches presumption seven years ago in *Leinoff,* 726 F.2d at 741–42, 220 USPQ at 850, agreeing with our sister circuits that the presumption represents an equitable balancing of the interests of the parties.

Aukerman asks that we discard the presumption of laches in patent cases and require an alleged infringer to prove each of the underlying factual elements thereby presumed. It argues that the presumption of laches is as unfair in patent litigation as the presumption of prejudice eliminated by our decision in *Cornetta v. United States,* 851 F.2d 1372 (Fed.Cir.1988) (*in banc*), which had previously been afforded the government by reason of an unreasonable delay in bringing a military pay case.

To support this change in the law, Aukerman asserts that prejudice from time delay in patent litigation is "overblown." It argues that patent defenses rest primarily on documentary evidence, not eyewitness accounts, and that, if witnesses forget information, it is likely they have done so long before the six-year period of the presumption. It also notes that an infringer could file a declaratory judgment action. However, our experience, which appellant invokes, has been that testimonial evidence is frequently critical to invalidity defenses and almost always so respecting unenforceability. Further, in assessing the propriety of the laches presumption, it cannot be assumed that the patentee generally makes a charge of infringement which would support a declaratory judgment action by the alleged infringer. In the simplest form of laches, as indicated above, no contact between the parties occurs prior to suit. Thus, this argument does not support a rejection of the laches presumption.

Other arguments by Aukerman that the presumption places unreasonable burdens on the patentee are not persuasive as will become apparent in the section of this opinion, *infra,* explaining the effect of the presumption.

In sum, we conclude that the presumption of laches based on the relevant six-year period, previously adopted in our precedent, should be maintained. *Prima facie,* the underlying critical factors of laches are presumed upon proof that the patentee delayed filing suit for more than

six years after actual or constructive knowledge of the defendant's alleged infringing activity.

 It must be emphasized that the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not *mandate* recognition of a laches defense in every case. Laches remains an equitable judgment of the trial court in light of all the circumstances. Laches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied.

### Cornetta v. United States

Our upholding of the laches presumption in patent cases based on a more than six-year delay in bringing suit does not conflict with the *in banc* decision in *Cornetta*, respecting a suit for reinstatement and back pay by a military officer,[13] which we expressly reaffirm. In *Cornetta*, upon proof that a delay in suit was unreasonable, the government was afforded a presumption of prejudice. This type of presumption originated in civilian pay cases. No specific time period gave rise to the presumption of prejudice. It was recognized regardless of the length of the delay, once the delay was found to be unreasonable. *Henry v. United States*, 153 F.Supp. 285, 290, 139 Ct.Cl. 362 (1957) (1 year, 10 months); *United States ex. rel. Arant v. Lane*, 249 U.S. 367, 372, 39 S.Ct. 293, 294, 63 L.Ed. 650 (1919) (1 year, 8 months); *Gersten v. United States*, 364 F.2d 850, 852, 176 Ct.Cl. 633 (1966) (5 years, 5 months); *Brundage v. United States*, 504 F.2d 1382, 1385, 205 Ct.Cl. 502 (1974), *cert. denied*, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975) (3 years, 8 months). In *Cornetta*, this court restored the requirement that the government establish that it was, in fact, prejudiced by the delay in a suit for military pay in accordance with general proof require-

ments of the laches defense. Specifically, the court rejected any presumption with respect to prejudice which had developed in U.S. Court of Claims precedent in civilian pay cases, stating:

> Notwithstanding any intimations in our earlier cases to the contrary, *see, e.g., Pepper [v. United States]*, 794 F.2d [1571] at 1575; [(Fed.Cir.)] *Deering [v. United States]*, 620 F.2d [242] at 246 [223 Ct.Cl. 342]; *Brundage*, 504 F.2d at 1386, we reject the notion that the government can rely on a presumption of prejudice, or shift the burden to plaintiff to show lack of prejudice if delay is long, to support the affirmative defense of laches.

*Cornetta*, 851 F.2d. at 1378.

The recognition of the presumption of laches, including the element of prejudice to an accused infringer, in a patent infringement suit does not conflict with the elimination of a presumption of prejudice to the United States in a pay case. Unlike the patent suit presumption, the presumption of economic prejudice involved in the pay case did not arise after a *specific* time period. Rather, the presumption arose from whatever period of delay was deemed unreasonable, in some instances no more than eighteen months. Furthermore, the presumption could not be justified on principles of fairness or public policy. The *Cornetta* court analyzed the relationship between a soldier and his government and concluded it was distinguishable from purely commercial relationships; that an individual soldier was at a decided disadvantage vis-á-vis the might of the government; and that the government held the evidence of its prejudice. For these reasons, a presumption of prejudice to the government could not be endorsed as a matter of fairness or public policy.

These "fairness" considerations are not transferable to patent litigation. In a military pay case, the economic prejudice to the government had been held to be simply having to pay the damages of the suit if the plaintiff should win, namely, a second

---

**13.** The original panel decision in this case held that the *Cornetta* decision eliminated the pre-

sumption of laches in patent cases. *A.C. Aukerman Co.*, 18 USPQ2d at 1623–24.

salary for the occupied position. A presumption of such prejudice would be effectively irrebuttable. In a patent case, economic prejudice to an accused infringer, as previously indicated, must be something more than the damages awardable upon a finding of infringement. Moreover, unlike the government defendant faced with modest claims for back pay, the private party defendant in patent litigation may be under a threat of being financially crippled or completely shut down. Also in private litigation, parties are more likely to be more evenly matched. For these reasons, the unfairness of a presumption which we perceived in a soldier's litigation against the government does not arise from the presumption recognized here in a patent suit.

### D. *Effect of the Laches Presumption*

■■■ By reason of the presumption, absent other equitable considerations, a *prima facie* defense of laches is made out upon proof by the accused infringer that the patentee delayed filing suit for six years after actual or constructive knowledge of the defendant's acts of alleged infringement. Without the presumption, the two facts of unreasonable delay and prejudice might reasonably be inferred from the length of the delay, but not necessarily. With the presumption, these facts *must* be inferred, absent rebuttal evidence. As explained in 10 *Moore's, supra*, § 301.-02, at III-13-14:

> [A] factual conclusion reached by inference is based on a process of reasoning and experience. A presumption, however, is a method of dealing with proof, normally to give it a greater effect than it would have if it were handled solely by the inferential process.

Numerous decisions indicate or suggest that the defendant's establishing a six-year delay shifts the burden of proof, that is, the ultimate burden of persuasion, from the defendant to the patentee. For example, the *Leinoff* decision could be read to take that position. 726 F.2d at 742. This view of the laches presumption is legally unsound.

Prior to 1975, the effect of a presumption was debatable. Thereafter, such effect was prescribed by Federal Rule of Evidence 301, effective August 1, 1975. That rule reads:

**Rule 301. Presumptions in General Civil Actions and Proceedings.**

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

This rule applies "even if the common law presumption had been accorded a greater weight in the past." 10 *Moore's, supra*, § 301.03, at III-18.

■■■ As finally adopted after much scholarly debate, Rule 301 embodies what is known as the "bursting bubble" theory of presumptions.[14] Under this theory, a presumption is not merely rebuttable but completely vanishes upon the introduction of evidence sufficient to support a finding of the nonexistence of the presumed fact. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254–55, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1980); *Del Vecchio v. Bowers*, 296 U.S. 280, 286–87, 56 S.Ct. 190, 193–94, 80 L.Ed. 229 (1935). In other words, the evidence must be sufficient to put the existence of a presumed fact into genuine dispute. The presumption compels the production of this minimum quantum of evidence from the party against whom it operates, nothing more. *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8 ("The word 'presumption' properly used refers only to a device for allocating the production burden.") (quoting Fleming James, Jr. & Geoffrey C. Hazard, Jr., *Civil Procedure* § 7.9, at 255 (2d ed.1977) (footnote omitted)). In sum, a presumption is not evidence. If the patentee presents a sufficiency of evidence which, if believed,

---

**14.** Rule 302 deals with state law presumptions and their effect, which may be different.

would preclude a directed finding in favor of the infringer, the presumption evaporates and the accused infringer is left to its proof. That is, the accused infringer would then have to satisfy its burden of persuasion with actual evidence. *See Del Vecchio,* 296 U.S. at 286, 56 S.Ct. at 193 (presumption of accidental death "falls out of case" with proffer of testimony sufficient to justify a finding of suicide). 10 *Moore's, supra,* § 301.04.

■ As an initial response to the defendant's evidence of at least a six-year delay, a patentee may offer proof that the delay has not in fact been six years—that is, that the time it first learned or should have known of the infringement after the patent issued was within six years.[15] If a patentee is successful on this factual issue, no presumption arises. *Cf. Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1571, 7 USPQ2d 1606, 1610 (Fed.Cir. 1988).

■ Once a presumption of laches arises, the patentee may offer proof directed to rebutting the laches factors. Such evidence may be directed to showing either that the patentee's delay was reasonable or that the defendant suffered no prejudice or both. *See TWM Mfg.,* 592 F.2d at 349, 201 USPQ at 435 (6th Cir.1979); *Maloney–Crawford Tank,* 494 F.2d at 404, 181 USPQ at 618. By raising a genuine issue respecting either factual element of a laches defense, the presumption of laches is overcome. *See Watkins v. Northwestern Ohio Tractor Pullers,* 630 F.2d 1155, 1159 (6th Cir.1980).

■ Thus, the presumption of laches may be eliminated by offering evidence to show an excuse for the delay or that the delay was reasonable, even if such evidence may ultimately be rejected as not persuasive. *See TWM Mfg.,* 592 F.2d at 349; *American Home Prods.,* 483 F.2d at 1122–24. Such evidence need only be sufficient to raise a genuine issue respecting the reasonableness of the delay to overcome the presumption. Evidence, for example, di-

rected to the excuses discussed in section III B, *supra,* will eliminate the laches presumption if sufficient to raise a genuine issue. By destroying the presumption in its entirety upon presentation of evidence which may justify the delay, the patentee is not disadvantaged by having to prove a negative. Moreover, such evidence is within the patentee's knowledge.

■ A patentee may similarly eliminate the presumption with an offer of evidence sufficient to place the matters of defense prejudice and economic prejudice genuinely in issue. Thus, the patentee may eliminate the presumption by offering proof that no *additional* prejudice occurred in the six-year time period, *i.e.,* that evidence respecting an alleged infringer's defenses remains available substantially as before the delay and that economic prejudice of the type delineated in section III B, *supra,* has not occurred.

■ Elimination of the presumption does not mean the patentee precludes the possibility of a laches defense; it does mean, however, that the presumption of laches plays no role in the ultimate decision. The facts of unreasonable delay and prejudice then must be proved and judged on the totality of the evidence presented.

■ Even if unable to overcome the presumption, a patentee may be able to preclude application of the laches defense with proof that the accused infringer was itself guilty of misdeeds towards the patentee. This flows from the maxim, "He who seeks equity must do equity."

■ Finally, we reiterate that, at all times, the defendant bears the ultimate burden of persuasion of the affirmative defense of laches. To the extent statements in *Meyers,* 912 F.2d at 1461, 16 USPQ2d at 1057; *Sun Studs, Inc. v. ATA Equip. Leasing,* 872 F.2d 978, 993, 10 USPQ2d 1338, 1351 (Fed.Cir.1989); *Jamesbury,* 839 F.2d at 1552, 5 USPQ2d at 1785; *Hottel,* 833 F.2d at 1572, 4 USPQ2d at 1940; *Bott,* 807 F.2d at 1575, 1 USPQ2d at 1216; *Mainland Indus. v. Standal's Pat-*

---

**15.** *See* Kevin G. McBride, Comment, *Attributing Knowledge to a Corporation as an Element of* *Laches in a Suit for Patent Infringement,* 8 NW. U.L. Rev. 698 (1985).

ents Ltd., 799 F.2d 746, 748, 230 USPQ 772, 773–74 (Fed.Cir.1986); Leinoff, 726 F.2d at 742, 220 USPQ at 850, or other precedent may suggest otherwise, they are expressly overruled. The burden of persuasion does not shift by reason of the patentee's six-year delay.

### E. Standard of Review

On appeal the standard of review of the conclusion of laches is abuse of discretion. An appellate court, however, may set aside a discretionary decision if the decision rests on an erroneous interpretation of the law or on clearly erroneous factual underpinnings. If such error is absent, the determination can be overturned only if the trial court's decision represents an unreasonable judgment in weighing relevant factors. Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870, 876, 20 USPQ2d 1045, 1050 (Fed.Cir.1991); PPG Indus. v. Celanese Polymer Specialities Co., 840 F.2d 1565, 1570–72, 6 USPQ2d 1010, 1015–16 (Fed.Cir.1988) (Bissell, J. additional views); Oliveira v. United States, 827 F.2d 735, 742 (Fed.Cir.1987); see also H.J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 762–63 (1982).

If the decision on laches is made on summary judgment, there must, in addition, be no genuine issues of material fact, the burden of proof of an issue must be correctly allocated, and all pertinent factors must be considered. See 6 Moore's, supra, ¶ 56.17[38] (2d ed. 1990). Accord TWM Mfg., 592 F.2d at 349, 201 USPQ at 436 (summary judgment overturned for failure to consider defendant's egregious conduct).

### F. Laches in This Case

Because we conclude that the district court shifted the ultimate burden of persuasion to the patentee to negate the prima facie defense of laches, the district court's grant of summary judgment on the laches defense must be reversed.

The district court stated it placed the "burden" on the patentee "of showing [that its] delay was not unreason-able and inexcusable." A.C. Aukerman Co. v. R.L. Chaides Constr. Co., No. C–88–2074–SW, slip op. at 5. This was a greater burden than the patentee had to bear to overcome the presumption. The patentee bears the burden only of coming forward with sufficient evidence to raise a genuine factual issue respecting the reasonableness of its conduct once the defendant shows delay in excess of six years. Here, Aukerman presented evidence that, during part of the delay, it was engaged in other litigation. The district court rejected this excuse because at no time did Aukerman give Chaides notice of such litigation and of its intention to sue Chaides upon its conclusion. However, there can be no rigid requirement in judging a laches defense that such notice must be given. If a defendant is, for example, aware of the litigation from other sources, it would place form over substance to require a specific notice. Vaupel Textilmaschinen KG, 944 F.2d at 878, 20 USPQ2d at 1051. Where there is prior contact, the overall equities may require appropriate notice, as in Jamesbury. However, a notice requirement is not to be rigidly imposed as the district court did in this case.

Similarly, we believe the court erred in resolving the issue of whether the defendant's infringing activities changed sufficiently to disrupt the laches period. It is not disputed that defendant's conduct changed during the laches time frame both by its manufacturing its own slip-forming device and by greatly increasing the amount of asymmetrical wall it poured. See supra n. 3. It could not be inferred against the patentee that these changed circumstances should have been known to the patentee or were immaterial to the determination of laches. Upon the record before us, summary judgment of laches was improperly granted. The issue of laches must be tried.

### G. Effect of Laches Defense

The district court ruled that laches can bar relief in a patent suit only for infringement prior to suit. The general

rule is that laches may bar partial or entire relief. *Restatement (Third) of Unfair Competition* § 30 (Tentative Draft No. 3, 1991); *Restatement (Second) of Torts* § 939 cmt. c (1977). A question was raised in the original panel opinion concerning this difference in the effect of a laches defense. *A.C. Aukerman*, 18 USPQ2d at 1623 n. 4. Inasmuch as this case will be remanded, it is appropriate to address this issue for the guidance of the district court.

In *Menendez v. Holt*, 128 U.S. at 523–24, 9 S.Ct. at 145, a trademark infringement case, the Supreme Court said:

> Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long and under such circumstances as to defeat the right itself.... Acquiescence to avail must be such as to create a new right in the defendant....
>
> So far as the act complained of is completed, acquiescence may defeat the remedy on the principle applicable when action is taken on the strength of encouragement to do it, but so far as the act is in progress and lies in the future, the right to the intervention of equity is not generally lost by previous delay, in respect to which the elements of an estoppel could rarely arise.

*See also McLean v. Fleming*, 96 U.S. 245, 257, 24 L.Ed. 828 (1877). Courts, including this court (*see, e.g., Leinoff*, 726 F.2d at 741, 220 USPQ at 850), in reliance *inter alia* on the *Menendez* decision, have held that laches bars damages for a patent defendant's pre-filing infringement but not for post-filing damages or injunctive relief unless elements of estoppel are established. In other areas of the law, some courts have concluded that the Supreme Court created no *per se* rule restricting the effect which a district court may afford the defense of laches on a continuing tort. Under that view, laches may bar all relief but only in egregious circumstances. *Accord Creswill v. Grand Lodge Knights of Pythias*, 225 U.S. 246, 261, 32 S.Ct. 822, 827, 56 L.Ed. 1074 (1912); *University of Pittsburgh v. Champion Prods.*, 686 F.2d 1040, 1045 (3d Cir.1982); *Restatement (Third) of Unfair Competition* § 30, at 31–32 (Tentative

Draft No. 3, 1991) (stating general rule) and cases cited therein.

The above cited precedent in trademark cases is not persuasive that the dichotomy in the effect given to the defenses of laches and equitable estoppel in patent cases should be eliminated. In patent cases, the limited term of protection of patent rights, usually 17 years, distinguishes such cases from trademark cases where protection can be of indefinite duration and laches may correspondingly run for decades. *See, e.g., United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918) (laches period of nearly 30 years). Moreover, the public interest in avoidance of confusion in the market place may lead a court to grant an injunction against trademark infringement on laches alone. *See Restatement (Third) of Unfair Competition* § 30, at 32 (Tentative Draft No. 3, 1991).

The stated difference in the effect of laches and estoppel has served well to emphasize that more is required in the overall equities than simple laches if an alleged infringer seeks to wholly bar a patentee's claim. Probably no better statement of reasons for limiting a laches defense in patent cases to past acts can be found than in *George J. Meyer Mfg. v. Miller Mfg.*, 24 F.2d 505, 507 (7th Cir.1928):

> There are peculiar and special reasons why the holder of a patent should not be barred from enforcing his right under the patent because of his failure to promptly sue infringers. Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. The patent litigation is often prolonged and expensive. Moreover from the very nature of the thing he cannot be fully cognizant of all infringements that occur throughout the length and breadth of this country. His information may be largely hearsay. Then, also, the validity of his patent and the infringement thereof may be, as here, disputed. These defenses present mixed questions of fact and law concerning which there is necessarily some doubt and uncertainty. In many cases, if not in most cases, the

doubts are serious ones. For an infringer naturally avoids making [an exact] copy of the patent. In a doubtful case the commercial success of the patented art is at times determinative of the issue of validity. This factor cannot be shown save as time establishes it. Moreover, common experience proves that inventions which appear to be revolutionary are often not accepted by the public and never become a commercial success. A patentee is therefore justified in waiting to ascertain whether realizations equal expectations.

We think, therefore, that there is justification in patent suits for withholding damages for infringements committed prior to the commencement of the suit when laches is established, notwithstanding injunctional relief be granted. But, when it can be shown that the holder of the patent in addition to being guilty of laches has, by his conduct, estopped himself from asserting his rights under the patent, all relief should be denied and the bill dismissed.

As an additional reason, we do not believe future relief should be barred as a result of the presumption afforded to a patent defendant in the usual laches situation. *Accord Naxon Telesign Corp.*, 686 F.2d at 1264, 216 USPQ at 662–63.

Finally, the general rule had to be broadly stated to cover a single wrong as well as a series of continuing wrongful acts. All relief would generally be denied by a finding of laches if there is only a single wrong. Relief from liability for past wrongs, but not future wrongs, is viewed as only a partial defense. No conflict between the rule stated in our precedent and the general rule necessarily exists.

■ In any event, we will continue to hold, as a matter of policy, that laches bars relief on a patentee's claim only with respect to damages accrued prior to suit. *Leinoff*, 726 F.2d at 741, 220 USPQ at 850. At least on the facts presented in this case,

we have no reason to revisit this accepted principle.

## IV.

## EQUITABLE ESTOPPEL

### A. *General Principles*

■ Equitable estoppel to assert a claim is another defense addressed to the sound discretion of the trial court. *Jamesbury*, 839 F.2d at 1553, 5 USPQ2d at 1786; *Olympia Werke*, 712 F.2d at 77, 219 USPQ at 110; *Studiengesellschaft Kohle*, 616 F.2d at 1325, 206 USPQ at 586. Where equitable estoppel is established, all relief on a claim may be barred. *Id.* Like laches, equitable estoppel is not limited to a particular factual situation nor subject to resolution by simple or hard and fast rules. At most, courts have provided general guidelines based on fact patterns which have been litigated, albeit attempting to provide a unifying set of principles.

The following statement of the underlying factual elements of equitable estoppel which generally are deemed significant reflects a reasonable and fairly complete distillation from the case law:

> An [equitable] estoppel case … has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies upon that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct.

*Remedies* § 2.3, at 42. In other authorities, elements [2] and [3] are frequently combined into a single "detrimental reliance" requirement. *See, e.g.*, 5 Chisum § 19.05[3], at 19–189. However, the statement of reliance and detriment as separate factors adds some clarity in this confusing area of the law.[16]

■ Unlike laches, equitable estoppel does not require the passage of an unrea-

---

16. Some other statements of equitable estoppel principles are narrower. For example, *The Restatement (Second) of Torts* § 894(1) (1979) requires that "one person make a definite misrep-

resentation of fact to another." However, that authority sets out the misleading silence concept as an *independent* defense.

sonable period of time in filing suit. However, the patent cases which have come before this court involving the issue of a patentee's inequitable delay in suing have almost invariably raised the defense not only of laches but also of equitable estoppel. In *Jamesbury*, which was such a case, we stated that equitable estoppel requires:

(1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the infringer, (3) affirmative conduct by the patentee inducing the belief that it abandoned its claims against the alleged infringer, [later defined to include silence] and (4) detrimental reliance by the infringer.

839 F.2d at 1553–54, 5 USPQ2d at 1786. This listing of factors followed earlier case law in our sister circuits. See *Olympia Werke*, 712 F.2d at 77, 219 USPQ at 109; *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d at 701, 216 USPQ at 866, and cases cited therein. The same requirements are stated in *Adelberg Labs. v. Miles, Inc.*, 921 F.2d 1267, 1273, 17 USPQ2d 1111, 1115 (Fed.Cir.1990); *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1461, 16 USPQ2d 1055, 1057 (Fed.Cir.1990); *Hottel Corp.*, 833 F.2d at 1573, 4 USPQ2d at 1941; *Young Eng'rs*, 721 F.2d at 1317, 219 USPQ at 1153.

 The test set out in *Jamesbury* confusingly intertwines the elements of laches and equitable estoppel and is expressly overruled. Delay in filing suit may be evidence which influences the assessment of whether the patentee's conduct is misleading but it is not a requirement of equitable estoppel. Even where such delay is present, the concepts of equitable estoppel and laches are distinct from one another.

 The first element of equitable estoppel concerns the statements or conduct of the patentee which must "communicate something in a misleading way." The "something" with which this case, as well as the vast majority of equitable estoppel cases in the patent field is concerned, is that the accused infringer will not be dis-

turbed by the plaintiff patentee in the activities in which the former is currently engaged.[17] The patentee's conduct must have supported an inference that the patentee did not intend to press an infringement claim against the alleged infringer. It is clear, thus, that for equitable estoppel the alleged infringer cannot be unaware—as is possible under laches—of the patentee and/or its patent. The alleged infringer also must know or reasonably be able to infer that the patentee has known of the former's activities for some time. In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years. In *Dwight & Lloyd Sintering*, Judge Learned Hand noted that estoppel was regularly based on "no further assurance [that a known competitor would not be sued than] the patentee's long inaction." 27 F.2d at 827. There is ample subsequent precedent that equitable estoppel may arise where, coupled with other factors, a patentee's "misleading conduct" is essentially misleading *inaction*. See *Hottel Corp.*, 833 F.2d at 1573–74, 4 USPQ2d at 1941, and cases cited therein. However, plaintiff's inaction must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned. *Id.*; *A.C. Aukerman Co. v. Miller Formless Co.*, 693 F.2d at 701, 216 USPQ at 866; *Jensen v. Western Irrigation & Mfg. Inc.*, 650 F.2d 165, 169, 207 USPQ 817, 819 (9th Cir.1980); *Continental Coatings Corp. v. Metco, Inc.*, 464 F.2d 1375, 1379–80, 174 USPQ 423, 426–427 (7th Cir.1972).

The second element, reliance, is not a requirement of laches but is essential to equitable estoppel. *Heckler v. Community Health Svcs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–24, 81 L.Ed.2d 42 (1984). The accused infringer must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with

---

**17.** *But see MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1571–74, 10 USPQ2d 1287, 1290–92 (Fed.Cir.1989) (equitable estoppel pre-cluded claim of co-ownership and inventorship against the patentee).

taking some action. Reliance is not the same as prejudice or harm, although frequently confused. An infringer can build a plant being entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the plant.

■ Finally, the accused infringer must establish that it would be materially prejudiced if the patentee is now permitted to proceed. As with laches, the prejudice may be a change of economic position or loss of evidence. *See, e.g., Advanced Hydraulics,* 525 F.2d at 481–82, 186 USPQ at 4–5.

■ Another significant difference from laches is that no presumption adheres to an equitable estoppel defense. Despite a six-year delay in suit being filed, a defendant must prove all of the factual elements of estoppel on which the discretionary power of the court rests. The reasons for this are two-fold. First, the presumed laches factors, that is, unreasonable and inexcusable delay and prejudice resulting therefrom are not elements of estoppel. Second, the relief granted in estoppel is broader than in laches. Because the whole suit may be barred, we conclude that the defendant should carry a burden to establish the defense based on proof, not a presumption.

■ Finally, the trial court must, even where the three elements of equitable estoppel are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit.

B. *Application of Equitable Estoppel Against Aukerman*

■ While equitable estoppel may be determined on summary judgment, we conclude that the district court improvidently granted summary judgment in this case.

The district court concluded that Aukerman's conduct led Chaides to believe Aukerman had abandoned its claim, that Chaides had relied on Aukerman's conduct to its detriment, and that Chaides was not guilty of unclean hands which would bar Chaides from assertion of an equitable defense. We conclude that the elements supporting equitable estoppel were in genuine dispute, that the evidence was not perceived in the light most favorable to Aukerman, that inferences of fact were drawn against Aukerman and that the entire issue must, in any event, be tried in light of the principles adopted here.

■ The initial dispute is whether the patentee's conduct was misleading in that Chaides reasonably inferred from Aukerman's conduct that it would be unmolested in using Aukerman's invention. Chaides argued that this factor was shown by the last letter from Aukerman in 1979 setting a deadline for taking a license followed by nine plus years of silence. Aukerman argued that Chaides had to prove *intentionally* misleading silence. The district court properly rejected Aukerman's argument respecting the need to prove intent to mislead on the basis of *Hottel,* 833 F.2d at 1574–75, 4 USPQ2d at 1941–42. How one characterizes a patentee's silence is immaterial. Properly focused, the issue here is whether Aukerman's course of conduct reasonably gave rise to an inference in Chaides that Aukerman was not going to enforce the '133 and '633 patents against Chaides. *Hottel,* 833 F.2d at 1574, 4 USPQ2d at 1942.[18] Moreover, silence alone will not create an estoppel unless there was a clear duty to speak, (*see Reay v. Raynor,* 19 F. 308, 311 (C.C.S.D.N.Y.1884)), or somehow the patentee's continued silence reenforces the defendant's inference from the plaintiff's known acquiescence that the defen-

---

18. This was called "bad faith" silence in *Hottel.* However, fraud or wrongful intent is not necessary to create an estoppel. On the other hand, where *mens rea* is present, such considerations may affect the overall equities. Bad faith silence may encompass cases where there is a duty to speak.

dant will be unmolested. Finally, on summary judgment, such inference must be the *only* possible inference from the evidence.

In view of the Aukerman/Chaides correspondence, Chaides was in a position to infer, following Chaides' reply stating any infringement problem was Gomaco's, that by remaining silent Aukerman abandoned its claim against Chaides. The length of the delay also favors drawing the inference because the longer the delay, the stronger the inference becomes. Aukerman argues that the delay is excused by reason of litigation against others, even though Chaides was not informed of the litigation. However, that argument is off the mark. A party must generally notify an accused infringer about other litigation for it to impact the defense of equitable estoppel. *See Vaupel,* 944 F.2d at 877, 20 USPQ2d at 1050; *Hottel,* 833 F.2d at 1573, 4 USPQ2d at 1940–41. *See also Studiengesellschaft Kohle,* 616 F.2d at 1330, 206 USPQ at 591. This "requirement" is a matter of logic. Other litigation can not logically enter into whether Chaides reasonably drew an inference that it would not be sued if such facts are not known to Chaides.

While the above factors favor the nonenforcement inference, Chaides' further statement that Aukerman would only recover $200–$300 a year could lead one in Chaides' position to infer that Aukerman did not sue because the amount in issue was *de minimis,* not that Aukerman was abandoning its claim against Chaides for all time regardless of quantum. At most Aukerman could merely have been waiving an infringement claim for $300.00 per year.

In view of the different inferences which could be drawn from the exchange of correspondence, it is clear that the court drew an unfavorable inference against Aukerman. That is impermissible on summary judgment.

Respecting misdeeds by Chaides, Aukerman argued Chaides was guilty of inequity by building a "copy" of the mold. The court concluded that there was no evidence that the "copy" infringed the patents, an issue on which Aukerman bore the burden of proof. The district court discounted Aukerman's contentions, construing the testimony of Mr. Chaides that he could not remember any differences between the original and the copy except in size as evidence of *noninfringement* inasmuch as Aukerman produced no evidence demonstrating "how the copy infringed the patents."

We disagree with the court that, in this phase of the litigation, Aukerman had the burden to prove that the copy infringed. The issue before the court was not a motion by Aukerman for summary judgment of infringement but a motion for summary judgment of equitable estoppel by Chaides. Absent Aukerman's concession of noninfringement, clearly not given, Chaides, the movant, had the burden of proof that the device which Chaides built and which all call a "copy" did not infringe. *Cf. Nutrition 21 v. United States,* 930 F.2d 867, 869, 18 USPQ2d 1347, 1349 (Fed.Cir.1991) (at preliminary injunction stage, the movant carries burden of showing likelihood of success on *all* disputed issues). Under this assignment of burdens, Mr. Chaides' testimony concerning the "copy" of the infringing device, if construed in the light most favorable to Aukerman, could amount to an admission, not a denial, of infringement and, at least, raises an issue of fact. In any event, for purposes of summary judgment, Chaides' copying should have been deemed misconduct to be weighed into the court's decision, but it was not.

We conclude that summary judgment, holding that Aukerman was equitably estopped from assertion of infringement against Chaides, was improperly granted and is reversed. The issue is remanded for trial.

## V.

## QUANTUM OF PROOF

This court has not previously addressed the issue of what evidentiary burden must be met by litigants seeking to prove a laches or an equitable estoppel defense. Because the question of quantum in patent cases arises in every case within this area of our exclusive jurisdiction, we conclude

that a uniform Federal Circuit rule should be adopted.

Standards of proof are typically judge-made requirements "shaped in accordance with considerations of due process and/or the importance of certain facts." *SSIH Equip. S.A. v. United States Int'l Trade Comm.*, 718 F.2d 365, 380, 218 USPQ 678, 691 (Nies, J., additional comments) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90, 103 S.Ct. 683, 691–92, 74 L.Ed.2d 548 (1983)).

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact-finding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.

*In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 1075–76, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring).

In civil cases litigants are generally required to prove facts by a preponderance of the evidence. *See* C. McCormick, *McCormick on Evidence* § 339 (2d ed.1972); 9 J. Wigmore, *Wigmore on Evidence* § 2498 (Chadbourn ed.1981). "[E]vidence preponderates when it is more convincing to the trier than the opposing evidence." *McCormick, supra*, at 793. The higher standard of "clear and convincing" proof is typically employed where the danger of deception is present (*e.g.*, establishing the terms of a lost will), where a particular claim is disfavored on policy grounds (*e.g.*, reformation or modification of a *written* contract), or where a particularly important individual interest is at stake such as one's reputation (*e.g.*, fraud or undue influence). *Id.* at 797–98; *SSIH*, 718 F.2d at 380–81, 218 USPQ at 691. The clear and convincing standard has also been imposed in some aspects of patent litigation by reason of the specific statutory provision that a patent is presumed valid. However, neither laches nor estoppel attacks a patent's validity.

▇▇▇ The issue of laches concerns delay by one party and harm to another. Neither of these factors implicates the type of special considerations which typically trigger imposition of the clear and convincing quantum of proof. Indeed, to the limited extent courts have touched on this issue, the great weight of authority favors application of the general preponderance of evidence standard. *Moore v. Shultz*, 491 F.2d 294, 300, 180 USPQ 548, 553 (10th Cir.), *cert. denied*, 419 U.S. 930, 95 S.Ct. 203, 42 L.Ed.2d 161 (1974); *Lotus Dev. v. Paperback Software Int'l*, 740 F.Supp. 37, 15 USPQ2d 1577, 1611 (D.Mass.1990); *Simmons Co. v. Baker*, 200 F.Supp. 149, 154, 131 USPQ 312, 315–16 (D.Mass.1961), *aff'd*, 307 F.2d 458 (1st Cir.1962); *Pratt & Whitney Canada, Inc. v. United States*, 17 Cl.Ct. 777, 788, 12 USPQ2d 1497, 1505 (Cl. Ct.1989), *aff'd*, 897 F.2d 539 (Fed.Cir.1990). Accordingly, we hold that "preponderance of the evidence" is the appropriate evidentiary standard to establish the facts relating to the laches issue.

The case law respecting the proper standard of proof for facts supporting the defense of equitable estoppel is less uniform. While many courts have required that such facts be proved by some larger quantum of evidence than a preponderance, many others have applied the basic standard. See J.F. Rydstrom, Annotation, *Quantum or Degree of Evidence Necessary to Prove an Equitable Estoppel*, 4 A.L.R.3d 361 (1965) and cases cited therein. Moreover, cases which have adopted a greater than ordinary burden of proof have often implicated one of the previously mentioned special considerations. *See, e.g., Chrysler Credit Corp. v. First Nat'l Bank and Trust Co.*, 746 F.2d 200, 206–07 (3rd Cir.1984) (applying standard of clear, precise, and unequivocal evidence under Pennsylvania law where elements of the estoppel defense under that state's law include fraudulent conduct); *Prize Steak Prods. v. Bally's Tom Foolery*, 717 F.2d 367, 370 (7th Cir. 1983) (applied clear, satisfactory and convincing standard where appellant contended that oral guaranty should be enforced notwithstanding statute of frauds). As explained in 28 Am.Jur.2d *Estoppel and Waiver* § 148, at 830–31 (1966), the disagreement over the appropriate standard may be more apparent than real,

because of the failure to distinguish between the quantum or weight of the evidence and the substance or implication of the evidence required to establish an equitable estoppel; that is to say, while the facts relied upon to establish an equitable estoppel must be clear, positive, and unequivocal in their implication, these facts need not be established by any more than a fair preponderance of the evidence.

*See also Estoppel,* 4 A.L.R.3d at 363 & 365.

■ In any event, since no special considerations are implicated by the defense of equitable estoppel as we have defined it herein, we adopt the preponderance of evidence standard in connection with the proof of equitable estoppel factors, absent special circumstances, such as fraud or intentional misconduct.

## VI.

### CONCLUSION

For the foregoing reasons, we reverse the ruling on summary judgment and remand this case to the district court for further proceedings consistent with this opinion.

## VII.

### COSTS

Each party pays its own costs.

**REVERSED AND REMANDED.**

PLAGER, Circuit Judge, concurring in part, dissenting in part.

Readers interested in the work of this court may wish to understand the changes that resulted from the court having taken this case *in banc,* following the publication of the original panel opinion, which was vacated. *See, A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* No. 90–1137, 18 USPQ2d 1618, 1991 WL 62407, 1991 U.S.App. LEXIS 7081 (Fed.Cir. Apr. 25, 1991). The decision today confirms the result and adopts the principles set forth in the original panel opinion. Estoppel and

laches in patent law are returned to conformity with their traditional common law role and concept. In all of this there is full agreement.

The opinions of the court *in banc* and the panel differ in one significant respect, however—the question of what to do with the so-called six year presumption of laches. All agree that the presumption as it had developed (or at least as it had sometimes been applied) is no longer appropriate as a matter of law.

The original panel concluded that, in keeping with the rule earlier announced *in banc* in *Cornetta* [1] and consistent with the restoration of laches to its proper place, the presumption should simply be abolished—it no longer serves a useful purpose. A majority of the court is unwilling to go that far. The alternative arrived at by the court *in banc* is to identify a two-part presumption, based on the two elements of laches.

A delay of more than six years in filing suit is presumed to be unreasonable and inexcusable. That puts the burden of production on plaintiff to come forward with some explanation for the delay. The burden of persuasion that the delay was unreasonable and inexcusable remains with the defendant who raised the issue. The other part of the presumption is that the delay was the cause of material harm to defendant. Again plaintiff is charged to speak first, and the burden of persuasion remains with the defendant.

Both parts of the presumption are 'bursting bubbles.' Any evidence that raises a genuine issue of relevant fact causes that part of the presumption to totally disappear. Further, the court announces that the bursting of one bubble simultaneously bursts the other bubble. That is, the presentation of an issue of fact addressed to either part of the presumption—for example, delay—automatically bursts the other part—here, harm—as well.

There are several reasons why I find myself unable to join this part of the *in banc* court's opinion. First, while the court notes that presumptions arise out of con-

---

1. *Cornetta v. United States,* 851 F.2d 1372 (Fed. Cir.1988).

siderations of fairness, public policy, and probability (see the Majority Opinion at p. 1034), the court never explicitly addresses how these considerations compel a presumption of laches in patent cases. Absent a persuasive explanation of why as a matter of fairness and public policy it is necessary to have this presumption, it remains unclear to what problem the presumption is a solution.

Second, the court candidly acknowledges that the 'borrowing' of the six year period from section 286 of the Patent Act, as the measure of the term of the presumption, creates two separate six year periods which are functionally and practically unrelated. As the court put it, the two rules (the statute's period for damages and the court's period for the invocation of the presumption) "have in common only the same number of years." (See the Majority Opinion at p. 1035). That other circuits formerly used the statute as the measure is at best a weak ground for continuing a rule that has so little acknowledged justification.[2] It would seem preferable to leave to the trial court the flexibility to determine when there is sufficient basis for invoking a factual presumption, if one is needed.

Third, a presumption such as that involved here typically is designed to place upon a party with special knowledge of the facts the burden of coming forward with that knowledge. Here the second part of the presumption, the presumption of harm, does the opposite. The burden of evidentiary production is placed on the plaintiff, the party least likely to know the facts about how and in what ways the defendant was harmed by the delay. The court recognizes this anomaly, and responds to it by creating a 'double bursting bubble.' As noted above, the bubble is burst not only by a factual showing that relates to one part of the presumption, but also by a factual showing that relates to the other, factually different, part of the presumption. This is a remarkable concept, perhaps unique in presumption law.

Maybe a case can be made that, after some time, a plaintiff's delay in bringing suit would raise a factual inference or presumption of unreasonableness, allowing defendant to obtain judgment on that particular issue, absent rebuttal.[3] But it is difficult to imagine the case for a presumption of harm, which allows a defendant to win if plaintiff cannot establish the contrary, when the relevant facts will invariably be in the hands of defendant. The 'double bursting bubble,' while creative, seems unnecessarily complicating.

Perhaps this is a mere quibble. No lawyer who reads carefully the court's instructions in this case, and who has even a remotely respectable case, should have any difficulty in creating the factual showing that will cause both parts of the presumption to 'burst.' And there can be little doubt that the trial judges will understand when to brush the presumption aside and get to the merits of the case. I agree nevertheless with the old Shaker song that 'Tis the gift to be simple,[4] a notion that particularly applies to legal rules; to that extent I respectfully dissent.

---

2. "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Justice Oliver Wendell Holmes, *The Path of the Law,* 10 Harv. L.Rev. 457, 469 (1897).

3. The use of the verb "allow" is deliberate. The court makes clear that even when a defendant establishes both unreasonable and inexcusable delay *and* harm, the defendant is nevertheless not automatically entitled to judgment. There remains a discretionary determination by the trial judge, reviewable on appeal.

4. 'Tis the gift to be simple 'Tis the gift to be free 'Tis the gift to come down Where you ought to be ...
 Aaron Copland made the melody of this song famous by his use of it in the ballet *Appalachian Spring.* The song itself was orchestrated by Copland and made part of a set of Old American Songs first performed by William Warfield.