## CELASTIC CORPORATION v. McCLELLAN SHOE SPECIALTY CO.
### No. 1026.

District Court, D. Delaware.
July 31, 1936.

Albert G. Davis and Daniel V. Mahoney (of Pennie, Davis, Marvin & Edmonds), of New York City, and Hugh M. Morris, of Wilmington, Del., for plaintiff.

Robert Cushman and Robert L. Thompson (of Roberts, Cushman & Woodberry), both of Boston, Mass., and William G. Mahaffy, of Wilmington, Del., for defendant.

NIELDS, District Judge.

This is a patent suit alleging infringement of patents No. 1,256,240 granted to Stanley P. Lovell February 12, 1928, and No. 1,353,599 granted to Stanley P. Lovell

September 21, 1920. The first patent claims a product consisting of any fabric filled with any colloidal material and the process of making such product. The second patent claims as a product a pile fabric treated with any water-insoluble, porous, colloidal material and the process of making such product. Both patents were assigned by Lovell to United Shoe Machinery Corporation March 19, 1925, and by it assigned to plaintiff June 8, 1925. The defenses are noninfringement, invalidity, laches, and estoppel.

In the trade the product of the patents is called "Celastic." In most shoes the toe cap is strengthened by the insertion of a "box." Box is a sheet of stiffening material formed to the proper shape and placed on the last after the lining of the toe has been put in place but before the "doubler" is applied and the leather of the toe is pulled over the last. A satisfactory box must be stiff so as to reinforce the toe. It must be flexible so it will give without breaking when stepped on. It must be resilient and resume its shape when the pressure is removed. It must be chemically inert so that it has no deleterious effect on the wearer's foot. Moreover, it must be capable of being used in the normal manufacture of shoes by machinery without causing undue complications or delay. Celastic has all of these properties.

Claim 1 and 2 of the first patent for "Improvements in Colloid-Treated Fabrics" (as amended by disclaimer) read as follows:

"1. As a new article of manufacture, a cloth fabric whose interstices are filled with powdered precipitated nitrocellulose, insoluble in water, and precipitated therein, in such state of subdivision and porosity that the resulting product is capable of being made flaccid substantially instantaneously by the use of an appropriate solvent, and in that condition is capable of being formed into a desired shape and become stiff, flexible, and resilient in its new form upon vaporization of the solvent.

"2. The method above described which consists in impregnating a sheet of fibrous cloth fabric with nitrocellulose, insoluble in water, in diffusion or solution and passing the cloth fabric immediately to a water bath; immersing the cloth fabric therein until the water displaces the solvent, precipitating the nitrocellulose in the fibrous cloth fabric, and filling the interstices of the cloth fabric with precipitated nitrocellulose in such state of subdivision and porosity that the resulting product is capable of being made flaccid substantially instantaneously by the use of an appropriate solvent, and in that condition is capable of being formed into a desired shape and become stiff, flexible, and resilient in its new form upon vaporization of the solvent."

The product of the second patent is exactly the same as the product of the first patent, except that the cloth used must be "pile" fabric. The process of the second patent is also the same except that Lovell adds "pile opening means" just before his water bath, and "pile closing means" just after his water bath.

In defendant's process, scrap celluloid in the form of small shavings is dissolved in acetone and is diluted with ethyl alcohol to form a fluid "dope." Canton flannel is passed through a tank of this dope whereby the Canton flannel is impregnated therewith. As the impregnated flannel comes from the tank of dope it passes between a pair of "squeeze rolls" which squeeze or wring out the excess dope. The nap on the flannel is slightly raised as the flannel leaves the squeeze rolls because the dope-coated nap sticks to the surface of the rolls. The impregnated flannel is then passed between two metal bars which lay the nap down again on the dope impregnated flannel. Then the flannel is passed into a steam chamber, the humidity of which is kept constant and the temperature of which is maintained at 150° F. by the introduction of steam through perforated steam pipes. The flannel remains in this steam chamber about three minutes, and it is then removed and dried. In the steam chamber substantially all of the acetone and 55 per cent. of the alcohol is removed by evaporation. The evaporation of acetone and alcohol chills the air near the surface of the fabric and condenses moisture from the steam-laden atmosphere upon the fabric.

From 1919 until 1930 J. L. McClellan and his successor in business, the defendant, manufactured box toes by impregnating Canton flannel with a dope consisting of nitrocellulose dissolved in acetone and diluted with alcohol, hanging the impregnated fabric in the humid air to evaporate the solvent and drying the product. When the solvent evaporated, it cooled the adjacent atmosphere to the dew point and condensed water on the surface of the fabric. From 1923 until 1930 water was placed on a concrete floor or on felt on the floor to

1050

insure the desired humidity in the atmosphere of the room where the solvent was evaporated. The final product contained precipitated nitrocellulose in the form of a porous film, but not in the form of a powder. Beginning in 1930 the solvent was evaporated by the use of a steam chamber in which the process was the same except that the solvent evaporated in three minutes, whereas formerly about eighteen hours were required. The humid-atmosphere product and the steam-chamber product were the same in chemical and physical properties, had the same appearance and the same qualities and the same mode of operation when subjected to a solvent for resoftening to be lasted into shoes, and produced shoes having box toes of the same quality. McClellan's and defendant's products have been in direct competition with the Celastic product since 1923. In 1927 McClellan's business was incorporated as the defendant company, and in February, 1929, control of the defendant was taken over by Marshall, Johnston, Shoemaker, and Taylor of the National Vulcanized Fibre Company of Delaware.

From 1923 to November, 1928, the Preble-Thompson Box Toe Company (subsequently by change of name The Preble Box Toe Company) manufactured box toes by impregnating Canton flannel with a dope consisting of nitrocellulose dissolved in acetone and diluted with ethyl alcohol, subsequently hanging the impregnated flannel in a room where the air was maintained at the desired degree of humidity by placing water on the floor, and where the solvent was evaporated, condensing moisture from the air on the surface of the fabric and subsequently drying the fabric. The resulting product contained precipitated nitrocellulose in the form of a porous film, and it was used in the manufacture of shoes by cutting out box-toe blanks, dipping the blanks in a solvent to soften them, lasting them in shoes while soft, and allowing the lasted toe to dry. The product was in direct competition with the plaintiff's product. On June 11, 1925, Celastic's attorneys, Fish, Richardson & Neave, of Boston, by letter to the Preble Company stated that the Preble product and process infringed both of the Lovell patents here in suit, and demanded that the Preble Company cease production and account for profits and damages. On June 23, 1925, Celastic's attorneys by letter informed the Preble Company that suit was unavoidable. After a

conference on June 26, 1925, with the Preble Company's patent attorney, Celastic after further investigation of the Preble Company's product and process informed the Preble Company on August 6, 1925, that Celastic had decided to file suit within two weeks. On August 19, 1925, Celastic informed the Preble Company that it had decided not to sue. Both on June 11, 1925, and on August 6, 1925, Celastic and its attorneys knew that in the Preble process the solvent was removed from the dope by evaporation in a room where the humidity of the air was regulated by the use of water on the floor, and Celastic had samples of the Preble product made by such process. In November, 1928, a fire destroyed the plant of the Preble Box Toe Company.

In February, 1929, defendant purchased the entire assets and good will of the Preble Company. At the time of this purchase defendant knew of the Preble humid-air solvent evaporation process, the product thereof, the 1925 infringement threat, and its subsequent withdrawal by Celastic. Relying in good faith on the belief resulting from plaintiff's inaction that Celastic did not consider that any valid patent right was being infringed, defendant, between February, 1929, and May, 1932, invested $46,000 in the business, and during this period enlarged its plant and its equipment.

In May, 1932, defendant received notice of infringement of the two Lovell patents in suit. This suit was filed April 26, 1933. Defendant's steam-chamber solvent evaporation process is the same as the Preble humid-air solvent evaporation process so far as infringement of the Lovell patents in suit is concerned. The only difference is that in defendant's steam-chamber the solvent is evaporated more rapidly. The product of the Preble humid-air solvent evaporation process is the same as the product of defendant's steam-chamber solvent evaporation process.

For a period of eight years defendant and its predecessor were lulled into security by plaintiff's failure to sue. Plaintiff has failed to give satisfactory explanation of its inaction. At this late date after defendant's investment it is inequitable that defendant should be called to account. Assuming the validity of plaintiff's patents and infringement thereof by defendant, plaintiff is not entitled to an injunction or an accounting. · Westco-Chippewa Pump Co. v. Delaware Electric & S. Co. (C.C.A.) 64 F.(2d) 185.

This opinion contains a statement of the essential facts and of the law applicable thereto in conformity with Equity Rule 70½ (28 U.S.C.A. following section 723).

The bill of complaint must be dismissed.