## TENNECO AUTOMOTIVE OPERATING COMPANY INC., Plaintiff,

v.

## VISTEON CORPORATION, Defendant.

### No. Civ. 03–1030–SRL.

United States District Court, D. Delaware.

June 28, 2005.

George Pazuniak, James Michael Olsen, and Francis DiGiovanni, of Connolly Bove Lodge & Hutz, L.L.P., Wilmington, DE, for Plaintiff, Gary H. Nunes, D. Scott Sudderth, Barry S. Goldsmith, John F. Morrow, Jr., of Womble Carlyle Sandridge & Rice, L.L.P., Tysons Corner, VA, of counsel.

Thomas C. Grimm, and Leslie A. Polizoti of Morris, Nichols, Arsht & Tunnel, Wilmington, DE. for Defendant, Harold V. Johnson, James R. Sobieraj, Timothy P. Lucier of Brinks Hofer Gilson & Lione, Chicago, IL and Raymond J. Vivacqua, and James K. Cleland of Brinks Hofer Gilson & Lione, Ann Arbor, MI, of counsel.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

On November 10, 2003, plaintiff Tenneco Automotive Operating Company filed the present action against defendant Visteon Corporation, alleging infringement of U.S. Patent Nos. 4,969,264 ("the '264 patent") and 5,118,476 ("the '476 patent") (collectively "the patents in suit"). On August 3, 2004, plaintiff filed an amended complaint. (D.I. 52) Defendant denied plaintiff's allegations. (D.I. 58) The court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1338(a). Presently before the court is plaintiff's motion for summary judgment on defendant's defenses of laches, estoppel, and implied license (D.I. 170), and defendant's motion for summary judgment on its defense of implied license (D.I. 180). For the reasons set forth below, the court grants in part and denies in part plaintiff's motion and denies defendant's motion.

### II. BACKGROUND

Plaintiff and defendant compete in the automotive parts and equipment industry. Each manufactures catalytic converters and supplies those converters to major automakers for use in automobiles. Generally speaking, catalytic converters consist of a metal tube, a catalyst substrate and, usually, a support mat.

In 1993, Ford Motor Company ("Ford") began development of catalytic converters. (D.I. 182, ex. 4 at 18) Ford's earliest versions of its catalytic converters were manufactured by inserting a preassembly, consisting of a mat wrapped around a catalyst substrate, into a metal tube and then reducing the tube's diameter. (*Id.* at 11–12) From the inception of its catalytic converter manufacturing program, Ford purchased its metal tubing from plaintiff. (*Id.,* ex. 1 at 33, ex. 2 at 191–92, ex. 3 at 17, ex. 4 at 40)

Prior to 2000, defendant consisted of certain subsidiaries and divisions of Ford.[1] (D.I. 172 at A0363) On June 28, 2000, Ford spun off defendant. (*Id.* at A0365) Since this spin-off, defendant has been in competition with plaintiff.

In early 2002, Deborah Clark, plaintiff's Engineering Manager, visited one of defendant's manufacturing equipment suppliers, Hess Engineering, Inc. ("Hess"). (*Id.* at A0088) During this visit, Clark observed equipment that was used to manufacture swaged converters. (*Id.*) Hess refused to tell Clark for whom the equipment was being manufactured. (*Id.*) Clark later learned that plaintiff had patents related to the manufacture of catalytic converters, and that some of these patents covered a process similar to that used by the Hess equipment. (*Id.* at A0089–A0090) Clark then reviewed the patents in suit and purchased defendant's converters to determine if defendant infringed plaintiff's patents. (*Id.* at A0086–A0087, A0090–A0093) Plaintiff sent defendant a cease and desist letter on September 19, 2003. (*Id.* at A0396) Prior to this letter, plaintiff never mentioned its catalytic converter patents to defendant, and never objected to defendant's converter designs or manufacturing processes. (*Id.* at A0416; D.I. 182, ex. 10

1. It is unclear from the record what involvement these subsidiaries and divisions had with Ford's catalytic converter program or what their exposure to plaintiff was.

at 94, ex. 13 at 101, ex. 24 at 7) The parties do not dispute that defendant had no knowledge of plaintiff's asserted patents prior to plaintiff's September 19, 2003 letter.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV. DISCUSSION

### A. Laches

Laches is defined as "the neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." *A.C. Aukerman Co. v. R.L Chaides Const. Co.*, 960 F.2d 1020, 1028–29 (Fed.Cir.1992) (*en banc*). For a defense of laches, the defendant has the burden of proving that: (1) the plaintiff delayed in filing suit for an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the defendant suffered material prejudice or injury as a result of the plaintiff's delay. *Id.* at 1028.

With regard to the first prong of unreasonable delay, "[t]he length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id.* at 1032. In determining whether the plaintiff's delay in filing suit was unreasonable, the court must look to the period of time beginning when the plaintiff knew or reasonably should have known of the defendant's alleged infringing activity and ending when the plaintiff filed suit. The period does not begin, however, until the patent issues. *Id.* In addition, the court must consider and weigh any excuses offered by the plaintiff for its delay including, but not limited to: (1) other litigation; (2) negotiations with the accused; (3) possible poverty or illness under limited circumstances; (4) wartime conditions; (5) the extent of

the alleged infringement; and (6) a dispute over the ownership of the asserted patent. *Id.* at 1033.

■ A presumption of unreasonable delay arises if the patentee delayed filing suit for six years after actual or constructive knowledge of the defendant's acts of alleged infringement. *Id.* at 1037. However, this presumption may be rebutted if the plaintiff is able to show sufficient evidence to generate a genuine issue of fact as to the existence of either one of the factual elements associated with the laches defense. *Id.* at 1038. If the presumption of laches is rebutted, the defense of laches is not eliminated. Rather, the defendant can still establish laches by establishing the elements for this defense based upon the totality of the evidence presented. *Id.* at 1038.

■ Turning to consider the second prong of material prejudice, the defendant can establish either evidentiary prejudice or economic prejudice. *Id.* Evidentiary prejudice may arise where the delay has curtailed the defendant's ability to present a full and fair defense on the merits due to the loss of evidence, the death of a witness, or the unreliability of memories. *Id.* Economic prejudice arises where a defendant suffers the loss of monetary investments or incurs damages which would have been prevented if the plaintiff had filed suit earlier. *Id.* In this regard, courts must look for a change in the economic position of the alleged infringer during the period of delay; courts cannot simply infer economic prejudice from the possibility of damages pursuant to a finding of liability for infringement. *Id.*

■ "The application of the defense of laches is committed to the sound discretion of the district court." *Id.* at 1032. Because it is equitable in nature, "mechanical rules" do not govern its application. *Id.* at 1032. Instead, the court must consider all of the facts and circumstances of the case and weigh the equities of the parties. "The issue of laches concerns delay by one party and harm to another. Neither of these factors implicates the type of special considerations which typically trigger imposition of the clear and convincing standard." Consequently, the defendant must establish the elements for the laches defense by the preponderance of the evidence, consistent with the burden of proof in equitable laches and estoppel cases. *Intuitive Surgical, Inc. v. Computer Motion, Inc.,* 2002 WL 31833867, *5 n. 4 (D.Del.2002). When laches is applied, the patentee may not recover any damages for the period of time prior to filing suit. *Aukerman,* 960 F.2d at 1028.

■ There are genuine issues of material fact which preclude granting summary judgment against defendant's laches defense. First, there is a genuine issue as to the period of time between when plaintiff first knew or reasonably should have known of defendant's alleged infringing activity and when plaintiff filed suit. The period between when Ford spun off of defendant and plaintiff's complaint is less than six years. (D.I. 1; D.I. 172 at A0365) Thus, defendant's activities alone do not create a presumption of laches. However, Ford began manufacturing catalytic converters in 1992. (D.I. 182, ex. 4 at 33–34) If Ford infringed the patents in suit,[2] and

2. There is a genuine issue as to whether Ford infringed the patents in suit. Defendant, which is accused of infringement, presented evidence suggesting that Ford had the same manufacturing processes. (D.I. 182, ex. 7 at 46; D.I. 197, ex. 81 at 2–4) Descriptions of Ford's converter manufacturing processes also suggest Ford might have infringed the patents in suit. (D.I. 182, ex. 2 at 179, ex. 3 at 16–17, ex. 4 at 11–12, 27–28, ex. 6 at 66–67, ex. 7 at 66) Plaintiff argues defendant has not produced evidence proving that Ford infringed the patents in suit. (D.I. 171 at 7 & n. 7, 25)

if plaintiff knew or reasonably should have known of this infringement,[3] then the period of Ford's infringement would be tacked onto plaintiff's delay in suing defendant.[4] *R2 Med. Sys., Inc. v. Katecho, Inc.*, 931 F.Supp. 1397, 1412–13 (N.D.Ill.1996); *Autoclave Eng'rs, Inc. v. Duriron Co., Inc.*, 190 U.S.P.Q. 125, 133 (E.D.Pa.1976); *Celastic Corp. v. McClellan Shoe Specialty Co.*, 15 F.Supp. 1048, 1050 (D.Del.1936); 6 Donald S. Chisum, Chisum on Patents § 19.05[2][a] (2003). This combined time period could exceed six years, giving rise to a presumption of laches.

3. There is a genuine issue as to whether plaintiff knew or should have known of any infringement by Ford. Defendant produced evidence that plaintiff observed and knew how Ford manufactured converters, attended meetings where Ford's manufacturing process was discussed, and received engineering drawings describing Ford's products. (D.I. 172 at A0051–A0054; D.I. 182, ex. 2 at 197–99, ex. 3 at 17–18, 36–38, ex. 4 at 34–38, ex. 5 at 56, 59–60, 65, 71, ex. 7 at 73–74, 87, 91–92, ex. 8 at 32–33, 36–39, 46–47; D.I. 197, ex. 40, ex. 42 at 59–60, exs. 45–52, ex. 55 at 17–18, 30; D.I. 198, ex. PX267 at V134663–V134664, ex. PX269 at V134648)

Plaintiff produced evidence that its personnel did not know and did not need to know the details of Ford's converter manufacturing processes, that its employees could not determine infringement based on Ford's converters and drawings, and that defendant's employees were unaware of specific events which would have given plaintiff notice of infringement. (D.I. 172 at A0034, A0049–A0050, A0058–A0060, A0069–A0070, A0075, A0079–A0083, A0120, A0126–A0129, A0131, A0147–A0149, A0154–A0156, A0160–A0161, A0165–A0168, A0177, A0177.1, A0184–A0185, A0188–A0189, A0229, A0239, A0241–A0242, A0279–A0282, A0321–A0322, A0325–A0326, A0328, A0332–A0333, A0335–A0340, A0355–A0356)

4. Defendant initially took the position that it could not be liable for any infringement prior to its existence (i.e., Ford's infringement prior to June 28, 2000). (D.I. 172 at A0401) This position conflicts with tacking any infringement by Ford onto any infringement by defendant. Tacking infringement by Ford onto any infringement by defendant may preclude de-

Even in the absence of a presumption of laches, there still remain genuine issues as to when plaintiff first became aware of defendant's alleged infringement,[5] whether defendant took steps to conceal its alleged infringement,[6] and whether defendant suffered economic[7] or evidentiary[8] prejudice as a result of plaintiff's delay. Consequently, the court denies plaintiff's motion for summary judgment against defendant's laches defense.

fendant from arguing that it is not liable for such infringement.

5. *Compare* D.I. 182, ex. 15 at 89, ex. 30 at 79, ex. PX272 at V010487–V010488, ex. PX273, ex. DX79 at V006439, ex. DX521 *with* D.I. 172 at A0096–A0098, A0295, A0300, A0302, A0366–A0369.

Plaintiff argues that employees with knowledge of infringing activities must have knowledge of the patents before imputing knowledge of the infringing activity to a corporation. (D.I. 171 at 26) A party may not rely on its failure to apprise itself of its own patents as an excuse for its delay in enforcing those patents. *Olympia Werke Aktiengesellschaft v. General Electric*, 545 F.Supp. 598, 612–13 (W.D.Va.1982). To hold otherwise would allow patentees to preclude laches defenses merely by not informing employees of patents.

6. *Compare* D.I. 182, ex. 24 at 4, exs. 28, 29; D.I. 197, ex. 56 at 38–41 *with* D.I. 172 at A0020–A0021, A0025–A0027, A0036–A0041, A0313, A0388–A0389.

7. *Compare* D.I. 182, ex. 24 at 7–8; D.I. 197, ex. 54 at 177, exs. 59–64, ex. 65 at 27; D.I. 198, ex. PX127 *with* D.I. 172 at A0170–A0175; A0276–A0277, A0293–A0294.

8. *See* D.I. 182, ex. 4 at 27, 42, 43, 45–46, 48, ex. 7 at 86–87, ex. 8 at 31, 38–39, 46–47; D.I. 197, ex. 42 at 14–15, ex. 44 at 36–37, ex. 58 at 25, 34, 37, 41, ex. 66 at 84, 120–21, 123, ex. 67 at 15–16, 24, 58, ex. 68 at 84–85, 90–91, ex. 69 at 24–25, ex. 70 at 18, 36–37, ex. 71 at 36, 39, 84–85, ex. 72 at 23, 56, ex. 73 at 34–36, ex. 74 at 86, ex. 75 at 75, ex. 76 at 49–50, ex. 77 at 30, ex. 78 at 41–42, 45.

## B. Equitable Estoppel

Equitable estoppel is neither limited to a particular factual situation nor subject to resolution by simple or hard and fast rules. *Aukerman*, 960 F.2d at 1041. In order to establish equitable estoppel, a defendant must show: (1) the patentee, through misleading words, conduct, or silence, led the alleged infringer to reasonably infer that the patentee did not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relied on that conduct; and (3) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *Id.*

Misleading statements or conduct may include specific statements, action, inaction, or silence where there was an obligation to speak. *Id.* at 1042. The patentee's conduct must "support[ ] an inference that the patentee [does] not intend to press an infringement claim against the alleged infringer." *Id.* In order to have equitable estoppel, "the alleged infringer must have knowledge of the patentee and its patent and must reasonably infer that the patentee acquiesced to the allegedly infringing activity for some time." *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed.Cir.2001).[9]

"Reliance is not a requirement of laches but is essential to equitable estoppel." *Aukerman*, 960 F.2d at 1042. "To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with" his or her activity. *Id.* at 1043. "As with

laches, [material] prejudice may be a change of economic position or loss of evidence." *Id.*

"Finally, the trial court must, even where the three elements of equitable estoppel are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit." *Id.*

Defendant claims it was unaware of the patents in suit until it received a cease and desist letter from plaintiff on September 19, 2003. (D.I. 196 at 17–19, 37) Plaintiff filed suit on November 10, 2003. (D.I. 1) A cease and desist letter would not lead an alleged infringer to reasonably infer that the patentee does not intend to enforce its patents against the alleged infringer. There is no evidence to suggest, and the court finds it highly unlikely, that plaintiff made any conflicting communications to defendant between its September 19th cease and desist letter and its November 10th complaint. Furthermore, defendant failed to produce any evidence that it suffered material prejudice between September 19th and November 10th, a mere fifty days. The court grants plaintiff's motion for summary judgment on defendant's equitable estoppel defense.

## C. Implied License

"An implied license signifies a patentee's waiver of the statutory right to exclude others from making, using, selling, offering to sell, or importing the patented

---

**9.** In *Aukerman,* the patentee accused the defendant of infringing the patents in suit more than eight years before it initiated litigation. 960 F.2d at 1026–27. Thus, *Aukerman'*s use of "or" in stating that a defendant relying on equitable estoppel must be aware of the "patentee and/or its patent" is dicta. The Federal Circuit later held that where an accused infringer admitted that it was unaware of the patent in suit, it could not assert an implied license through equitable estoppel. *Winbond,* 262 F.3d at 1374. The court concludes that in order to assert equitable estoppel, an accused infringer must have knowledge of the patentee and its patent.

invention." *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed.Cir.1997). In order to establish an implied license, the defendant must show a nexus between the patentee's purported waiver of its rights and the defendant's allegedly infringing course of action. *Winbond*, 262 F.3d at 1374; *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1559 (Fed.Cir. 1983). The Federal Circuit has recognized implied licenses through: (1) equitable estoppel; (2) legal estoppel; (3) acquiescence; and (4) conduct.[10] *Wang*, 103 F.3d at 1580. However, "[t]hese labels describe not different kinds of licenses, but rather different categories of conduct, which lead to the same conclusion: an implied license." *Id.* at 1580.

■ A defendant establishes a defense of implied license through conduct by showing that: (1) a relationship existed between plaintiff and defendant; (2) within that relationship, plaintiff granted defendant a right to use plaintiff's patents; (3) plaintiff received valuable consideration for the grant of right; (4) plaintiff's statements and conduct created the impression that plaintiff consented to defendant's use of plaintiff's patents; (5) plaintiff denied that defendant had an implied license. *Id.* at 1579.

■ To establish a finding of implied license through legal estoppel, defendant must establish that plaintiff: (1) licensed or assigned a right; (2) received consideration for that right; and (3) then sought to derogate from the right granted. *Winbond*, 262 F.3d at 1375; *Wang*, 103 F.3d at 1581.

■ There is no dispute that there was a relationship between plaintiff and defendant. (D.I. 171 at 4, 6–21; D.I. 181 at 2–19; D.I. 193 at 3–25; D.I. 196 at 4–219) The parties also do not dispute that plaintiff denied that defendant had an implied license. (D.I. 1; D.I. 171 at 34–39; D.I. 193 at 25–37) However, there are genuine issues as to whether plaintiff made statements and engaged in actions which created the impression that it consented to and granted defendant's use of its patents,[11] and whether plaintiff received valu-

10. Defendant only alleges an implied license by conduct and legal estoppel. (D.I. 181 at 1–2; D.I. 196 at 30) Furthermore, defendant's "motion is directed to the narrow issue of an implied license to manufacture and sell the U222/228 and P221 underbody catalytic converters." (D.I. 206 at 1)

11. Defendant produced evidence that plaintiff had at least some say in the design of defendant's catalytic converters, received engineering drawings of defendant's catalytic converters, observed defendant's manufacturing processes, attended meetings where defendant's manufacturing process was discussed, purchased prototypes of defendant's catalytic converters and provided tubing for defendant's catalytic converters. (D.I. 182, ex. 4 at 40, 48, ex. 10 at 84–85, 221–23, 247–48, 257–58, ex. 11 at 195, ex. 13 at 60–61, 131–132, 137, ex. 15 at 77, 89, ex. 16 at 76, ex. 17 at 84–85, 105, 115, 125–126, ex. 18 at V009156, ex. 19 at TA–05118, ex. 20 at V134593–V134595, ex. 21 at 13, 56–57, 67, 78, 98–99, ex. 22 at V074556–V074557, ex. 23 at 91–92, 132–33, ex. 24 at 2–7, ex. 25 at V007902–V007904, ex. 26 at 15–16, 22–24, 29–30, 47–48, ex. 28, ex. 29, ex. 30 at 10–13, 15, 57–58, 69, 76–77, 79, 89, 124–25, 170, 194, 208, 213–15, 218, ex. 31, ex. 32, ex. 33 at V108949, ex. 35 at TA–10459, ex. 37 at V107513, ex. PX272 at V010487, ex. PX273, ex. DX79 at V006439, ex. DX84, ex. DX86, ex. DX87 at TA–5124, ex. DX88, ex. DX91 at V117143–V117144, ex. DX96 at V110277, V110279, ex. DX223, ex. DX131 at TA–05173, ex. DX335, ex. DX340 at TA–18823, ex. DX347, ex. DX348, ex. DX349, ex. DX384, ex. DX521, ex. DX525 at TA–17111, ex. DX528 at TA–17224)

Plaintiff produced evidence that it was not responsible for the design of defendant's converters, that it did not obtain information necessary to allege infringement until 2003, and that defendant took steps to conceal its activities. (D.I. 172 at A0020–A0022, A0025–A0027, A0036–A0041, A0086–A0094, A0096–A0099, A0186–A0187, A0262–A0263, A0292.1, A0295–A0298, A0300–A0302, A0313, A0346–A0354, A0366–A0369, A0388–A0389, A0390–A0395, A0451–A0452; D.I. 193, ex. B at 28,

able consideration for the grant of right.[12] Consequently, the court finds that there are genuine issues of material fact as to whether plaintiff's conduct created an implied license.[13]

## V. CONCLUSION

For the reasons set forth above, the court grants plaintiff's motion for summary judgment of defendant's equitable estoppel and implied license through legal estoppel defenses. (D.I. 170) However, the court denies plaintiff's motion for summary judgment on defendant's defenses of laches and implied license by conduct. (D.I. 170) The court also denies defendant's motion for summary judgment on its defense of implied license. (D.I. 180) An appropriate order shall issue.

## ORDER

At Wilmington this 28th day of June, 2005, consistent with the opinion that issued this same date;

IT IS ORDERED that:

1. Plaintiff's motion for summary judgment of defendant's equitable estoppel and implied license through legal estoppel defenses is granted. (D.I. 170)

2. Plaintiff's motion for summary judgment on defendant's laches and implied license by conduct defenses is denied. (D.I. 170)

3. Defendant's motion for summary judgment on its defense of implied license is denied. (D.I. 180)

129, ex. E at 21–22, 93–94, ex. F at 160, 164–65, 169–70, 180, ex. G at 13, 77, 149, ex. K at 211–12, 224, 226–27; D.I. 213, ex. 5 at 65–66, 74, ex. 9 at 164–67, 170, 177, ex. 10 at 250)

12. *Compare* D.I. 182, ex. 10 at 64–65, 219–220, ex. 13 at 61, 151–52, DX 512 at TA–13247 *with* D.I. 193, ex. J at 131–32; D.I. 213, ex. 5 at 77.

13. The court finds, however, that there is no genuine issue of material fact underlying a finding of no implied license by legal estoppel. In the context of patent infringement, an implied license based on legal estoppel exists where a patentee expressly licensed some tangible patent right to another party, the licensor received consideration for the license, and then the licensor attempted to revoke that right. *Winbond*, 262 F.3d at 1375; *AMP Inc. v. United States*, 389 F.2d 448, 454 (Ct.Cl.1968); *cf. Wang Labs.*, 103 F.3d at 1582; *Spindelfabrik Suessen–Schurr Stahlecker & Grill v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081–82 (Fed.Cir.1987). Defendant presented no evidence that plaintiff expressly licensed its patents to defendant. There is no genuine issue of material fact underlying a defense of implied license by legal estoppel.