1042

ILLINOIS TOOL WORKS, INC.
dba Wynn's, a Delaware
corporation, Plaintiff,

v.

MOC PRODUCTS COMPANY, INC., a
California corporation, Defendant.

Case No. 09CV1887 JLS (MDD).

United States District Court,
S.D. California.

Oct. 15, 2012.

Brian G. Arnold, Laura Ann Wytsma, Mark D. Campbell, Loeb & Loeb LLP, Los Angeles, CA, for Plaintiff.

Lee Grossman, Grossman Law Offices, Arlington Heights, IL, Mark Grossman, Tejal P. Fowler, Grossman Law Offices, Chicago, IL, Sean Marco Kneafsey, Shaun Swiger, Kneafsey & Friend LLP, Los Angeles, CA, for Defendant.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REMAINING MOTIONS IN LIMINE

(ECF Nos. 254, 255, 257)

JANIS L. SAMMARTINO, District Judge.

Presently before the Court are the three remaining motions in limine filed by Plaintiff Illinois Tool Works, Inc. d/b/a Wynn's ("ITW"). (Pl.'s MiL No. 2, ECF No. 254; Pl.'s MiL No. 3, ECF No. 255; Pl.'s MiL No. 5, ECF No. 257). The motions seek to prevent Defendant MOC Products Company, Inc. ("MOC") from presenting certain evidence to the jury relating to MOC's equitable defenses of laches and equitable estoppel. In its prior Order on the Motions in Limine, the Court reserved ruling on these three motions pending resolution of how MOC's equitable defenses would be presented at trial. (Order on the MiLs, ECF No. 289). Also before the Court is the parties' Joint Brief Regarding Disputed Jury Instructions. (Jt. Brief Regarding Disputed Jury Instructions, ECF No. 285). The parties disagree on seven jury instructions and the primary source of conflict is the trial presentation of MOC's equitable defenses.

Although both parties concede that MOC's equitable defenses are for the Court to decide, they disagree as to whether the jury should be informed or instructed on those defenses. To clarify this dispute, the Court ordered the parties to submit supplemental briefs. (Pl.'s Brief, ECF No. 295; Def.'s Brief, ECF No. 296; Pl.'s Reply Brief, ECF No. 297; Def.'s Reply Brief, ECF No. 298). The briefs discuss whether the jury must hear evidence or receive instructions regarding MOC's equitable defenses in order to decide the issues of willful infringement and inducement of infringement. (Pl.'s Brief

at 6–7, ECF No. 295; Def.'s Brief at 8–10, ECF No. 296).

The briefs also address the Court's responsibility for ruling on the objective prong of willful infringement in the wake of the Federal Circuit's opinion in *Bard Peripheral Vascular, Inc. v. W.L. Gore and Associates, Inc.*, 682 F.3d 1003 (Fed. Cir.2012). (Pl.'s Brief at 8–9, ECF No. 295; Def.'s Brief at 2–3, ECF No. 296). The briefs discuss the scope of the evidentiary record that the Court must review before ruling on objective willfulness, which in turn may impact the timing of the Court's ruling. (Pl.'s Brief at 8–9, ECF No. 295; Def.'s Brief at 2–3, ECF No. 296).

Having considered the parties' arguments and the law, as well as the interests of judicial economy, the Court concludes that MOC's equitable defenses are best presented in a separate bench trial to occur immediately following the jury trial on liability and damages. In light of the Court's bifurcation of the legal and equitable issues, the Court **GRANTS IN PART AND DENIES IN PART** ITW's remaining motions in limine. As MOC's equitable defenses will be decided exclusively by the Court, the Court will exclude evidence from the jury that raises purely equitable considerations, such as ITW's motive for bringing suit, (Pl.'s MiL No. 2, ECF No. 254), ITW's size (Pl.'s MiL No. 3, ECF No. 255), and ITW's knowledge of MOC's products (Pl.'s MiL No. 5, ECF No. 257). Such evidence will be admitted during the bench trial, however, as it remains relevant to the Court's consideration of the equitable issues. Finally, the Court declines to instruct the jury on either of MOC's equitable defenses. As the equitable defenses will be decided exclusively by the Court, instructing the jury on those matters would be both superfluous and misleading.

### 1. Presentation of MOC's Equitable Defenses at Trial

#### A. Bifurcation of the Legal and Equitable Issues

 Equitable defenses, such as laches and equitable estoppel, are ultimately to be decided by the Court, not the jury. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.Cir. 1992) (en banc) ("As equitable defenses, laches and equitable estoppel are matters committed to the sound discretion of the trial judge...."). Because legal and equitable issues are committed to different factfinders, "it is common and appropriate to hold separate jury and bench trials on the different issues." PETER S. MENELL ET AL., PATENT CASE MANAGEMENT JUDICIAL GUIDE 8–4 (2009). "Separate trials are particularly appropriate where the equitable issues involve facts that are irrelevant or marginally relevant to the liability issues to be decided by the jury, or which may prejudice a party's case on infringement or validity." *Id.*

 Although ITW and MOC agree that the Court must have the final word on MOC's defenses of laches and equitable estoppel, the parties disagree as to whether there is any evidence regarding those defenses that the jury must hear. ITW denies that any evidence regarding MOC's equitable defenses is relevant to issues that the jury must decide. (Pl.'s Brief at 5–8, ECF No. 295). MOC insists, however, that its evidence on the equitable defenses is pertinent, at the very least, to the issues of objective willfulness, subjective willfulness, and inducement of infringement. (Def.'s Brief at 8–10, ECF No. 296).

MOC expends considerable effort arguing that its laches and equitable estoppel defenses, and all evidence in support thereof, are critical to the determination of

objective willfulness because the Court must decide whether MOC relied on a reasonable defense to a charge of infringement. (Def.'s Brief at 8–10, ECF No. 296; Jt. Brief Regarding Disputed Jury Instructions at 15–16, ECF No. 285). MOC argues that, in doing so, the Court must consider *all* of MOC's defenses, including laches and equitable estoppel. (Def.'s Brief at 8, ECF No. 296).

MOC's argument suffers from two flaws. First, the laches defense is not pertinent to objective willfulness because it is not a defense that MOC could have reasonably relied upon at the time the allegedly infringing activity began.[1] *See i4i Ltd. P'Ship v. Microsoft Corp.*, 670 F.Supp.2d 568, 581 (E.D.Tex.2009). The objective willfulness analysis is limited to defenses, including equitable defenses, that would have been "apparent and considered by a reasonable person in [the position of the alleged infringer] prior to its infringing activity." *Id.* Since the defense of laches necessarily becomes apparent and available only after litigation commences following a long period of silence, usually lasting many years, it is not one of those defenses that may obviate a finding of objective recklessness.[2] *See id.* Second, objective willfulness is an issue that the

Court must decide, not the jury—as *Bard* makes clear—and any marginal relevance that laches or equitable estoppel may have to that issue cannot justify informing or instructing the jury on those defenses. *See Bard*, 682 F.3d at 1007.

MOC also argues that its evidence regarding laches and equitable estoppel is relevant to the issues of subjective willfulness and inducement of infringement, both of which are for the jury to decide. (Def.'s Reply Brief at 2, ECF No. 298). According to MOC, those two issues hinge on the "element of intent," which requires the jury to consider whether "the defendant believed it had a legitimate defense" to patent infringement. (*Id.* at 3). MOC concludes that the jury must be informed and instructed on the possibility that MOC believed that the defenses of laches and equitable estoppel were available. (*Id.*)

Although MOC is correct that evidence probative of its intent or state of mind should not be kept from the jury,[3] at least some of MOC's evidence in support of its equitable defenses does not bear on those issues. For example, MOC's evidence regarding ITW's alleged motive for filing suit raises purely equitable considerations that could not possibly be probative of

---

1. At the October 10, 2012 hearing, both parties called to the Court's attention additional case law regarding the appropriate standard for willful infringement. These authorities were not referenced in the parties' supplemental briefs. The Court is not persuaded, however, that any of the new authorities cited by the parties undermines the Court's settled conclusion that, in this particular case, willfulness must be assessed in light of all the facts and circumstances existing before, or at the time, the allegedly infringing activity began.

2. The defense of equitable estoppel *may* be relevant to objective willfulness if it is based on facts and circumstances that existed prior to the commencement of the allegedly infringing activity. The misleading communication

by the patentee, and subsequent reliance on it by the alleged infringer, might take place before, or at the same time as, the alleged infringement. Nevertheless, MOC's equitable estoppel argument, as the Court understands it, is based exclusively on ITW's eight-year silence before filing suit.

3. The Court reiterates its conclusion, first articulated at the summary judgment stage, that "ITW's inaction can have some bearing on whether MOC knew the acts it induced were infringing." (Order on the MSJs at 12, ECF No. 219). MOC's knowledge, or intent, is relevant to the jury's consideration of inducement of infringement, as well as subjective willfulness, and MOC should be allowed to introduce evidence on that point.

MOC's intent or state of mind. (*See* Pl.'s MiL No. 2, ECF No. 254; Pl.'s MiL No. 5, ECF No. 257).

Moreover, much of MOC's evidence deliberately highlights ITW's alleged misconduct, which could needlessly confuse the jury and tempt them to decide the patent infringement claims on the basis of equitable factors. (*See e.g.*, Pl.'s MiL No. 2, ECF No. 254). Presenting the jury with such evidence may contaminate their factual findings on legal issues, which must be made strictly on the basis of the evidence and the law, without reference to considerations of fairness or equity.

Thus, the Court finds that a substantial amount of evidence bearing on MOC's equitable defenses should not reach the jury. For this reason, the Court bifurcates the equitable and legal issues in this suit, leaving MOC's laches and equitable estoppel defenses to be addressed in a separate hearing outside the presence of the jury.

### B. Timing of the Bench Trial

The interests of judicial economy indicate that a bench trial on MOC's equitable defenses should take place after the jury verdict in the infringement proceedings. Because ITW intends to argue that MOC's deliberate copying of ITW's patented device precludes MOC from raising any equitable defenses, holding the bench trial after the infringement proceeding—during which the parties will fully litigate the issues of copying and willfulness—will avoid cumulative presentation of evidence. (Pl.'s Brief at 4–5, ECF No. 295).

Although holding the bench trial before the jury trial is tempting in light of the possibility that MOC may succeed on its equitable estoppel defense, thereby ending the suit, it is by no means clear that such a result is likely, much less certain. Indeed, if MOC succeeds only on its laches defense, this matter would still need to proceed to a trial on post-filing damages. *See*

*Aukerman*, 960 F.2d at 1041. Efficiency concerns therefore counsel delaying the bench trial until after the jury trial.

Furthermore, ITW's allegations of deliberate copying and subjective willfulness are independent factual questions that would typically be decided by the jury. As ITW has a colorable claim to a jury regarding these factual allegations, it is prudent to reserve the equitable issues until after the jury trial. The Court will also benefit from the jury's factual findings as it weighs the equities between the parties. (Pl.'s Brief at 4–5, ECF No. 295).

### C. Timing of the Court's Ruling on Objective Willfulness

In *Bard*, the Federal Circuit revised the law of willful patent infringement by establishing that the objective prong of willfulness is ultimately a question of law to be decided by the Court, subject to *de novo* review. *Bard*, 682 F.3d at 1007. *Bard* recognized that willfulness entails an "objective assessment of potential defenses based on the risk presented by the patent," which typically depends on whether an alleged infringer's "defense or noninfringement theory was 'reasonable.'" *Id.* *Bard* made clear that the Court, not the jury, is best suited to make this "determination of reasonableness." *Id.*

*Bard* does not clearly specify, however, the sequence in which objective and subjective willfulness must be considered. Here, ITW argues that the Court should decide the issue of objective willfulness only *after* the jury returns a verdict on subjective willfulness. (Pl.'s Brief at 8–9, ECF No. 295). ITW reads *Bard* as allowing the Court to delay ruling on objective willfulness until there is a fully developed factual record, including jury findings on underlying factual questions that may be pertinent to an alleged infringer's defenses. (*Id.*)

MOC objects to this sequence and instead calls for the Court to decide the issue of objective wilfulness at the close of the evidence and *before* closing arguments and instructions to the jury. (Def.'s Brief at 3, ECF No. 296). MOC argues that it would be "highly prejudicial" for ITW to argue subjective willfulness in its closing arguments to the jury, and for the jury to be instructed on that issue, when the Court may ultimately determine that ITW has failed to carry its burden of proving the objective prong of willfulness. (*Id.*)

*Bard* does not neatly resolve this disagreement. *Bard* does explicitly permit a trial court to submit underlying factual questions to the jury when an alleged infringer's potential defenses depend partially or entirely on such questions. *Bard*, 682 F.3d at 1007 ("In considering the objective prong ... the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness."). At the same time, however, *Bard* seems to indicate that the objective prong of willfulness is a "threshold" question that logically precedes the jury's determination of the subjective prong. *Id.* at 1005.

Here, to decide the objective prong of willfulness, the Court will need to evaluate MOC's potential defenses of anticipation and obviousness, both of which turn either in whole or in part on factual questions. (Pl.'s Brief at 8–9, ECF No. 295). Delaying a ruling until after a jury verdict in the infringement proceedings is consistent with *Bard* and is more likely to produce an accurate and informed ruling. *See Bard*, 682 F.3d at 1007; *AIA Engineering Ltd. v. Magotteaux Int'l*, 2012 WL 4442665 at *4, 2012 U.S. Dist. LEXIS 136606 at *12 (M.D.Tenn. Sept. 21, 2012); *Cook Inc. v. Endologix, Inc.*, 2012 WL 3779198 at *1,

2012 U.S. Dist. LEXIS 123577 at *2 (S.D.Ind. Aug. 30, 2012). Although allowing the subjective prong of willfulness to reach the jury may result in some additional prejudice to MOC, such prejudice would be very slight considering that ITW will in any event be presenting the jury with its allegations that MOC engaged in deliberate copying. (Pl.'s Brief at 8–9, ECF No. 295). Thus, the Court will rule on the objective prong of willfulness after the jury has returned a verdict in the infringement proceeding.

### 2. ITW's Remaining Motions in Limine

#### A. Plaintiff's Motion in Limine No. 2: Motion to Preclude Defendant From Referencing Alleged Motive of Plaintiff In Bringing Lawsuit

■ ITW seeks to prevent MOC from "offering argument or posing questions regarding [ITW's] alleged motive in bringing the instant lawsuit." (Pl.'s MiL No. 2, ECF No. 253). MOC alleges that ITW brought this action in retaliation for MOC's earlier patent infringement lawsuit against ITW, *EBS Automotive Services & MOC Products Co., Inc. v. Illinois Tool Works, Inc., dba Wynn's*, Case No. 09–CV–996 JLS (MDD) [hereinafter *EBS*]. ITW contends that evidence of this alleged motive in bringing suit is irrelevant, misleading, and prejudicial. (*Id.*).

MOC opposes ITW's motion, arguing that ITW's motive in bringing this lawsuit is directly relevant to MOC's defenses of laches and equitable estoppel. (Opp'n to Pl.'s MiL No. 2, ECF No. 262). According to MOC, evidence regarding ITW's motive is needed to show that ITW's delay in filing suit was "unreasonable and unjustified." (*Id.*)

As discussed above, the Court has bifurcated the legal and equitable issues in this case and has determined that the jury will not hear evidence that is irrelevant to the

issues it must decide. Because evidence regarding ITW's alleged motive is only relevant, if at all, to MOC's laches and estoppel defenses, the Court **GRANTS IN PART** ITW's motion and will exclude this evidence from the jury's consideration.

Evidence regarding ITW's alleged motive in filing suit may be relevant, however, to the Court's discretionary application of the equitable doctrines of laches and equitable estoppel. In deciding the equitable defenses, the Court must "look at all of the particular facts and circumstances of each case and weigh the equities of the parties." *Aukerman,* 960 F.2d at 1028. If ITW's assertion of its patent rights was prompted by an improper or illegitimate motive, as MOC alleges, the Court may take that circumstance into account. The Court's equitable judgment in this case should be informed by any evidence that may shift the balance of the equities in favor of either party. *See id.* Thus, the Court **DENIES IN PART** ITW's motion and will permit MOC to present any evidence regarding ITW's allegedly improper motive for filing suit at the bench trial on the equitable defenses.

### B. Plaintiff's Motion in Limine No. 3: Motion to Preclude Defendant From Referencing ITW's Size

■ ITW seeks to preclude MOC from referencing ITW's size or market share on the ground that such references would be irrelevant, prejudicial, and misleading. (Pl.'s MiL No. 3, ECF No. 255).

MOC argues that ITW's size and market dominance are relevant to its defense of laches because "MOC will need to introduce evidence that ITW likely had actual knowledge, or at the very least, had constructive knowledge of MOC's accused device. Relevant to that will be ITW's duty and ability to investigate potential infringement." (Opp'n to Pl.'s MiL No. 3, ECF No. 263).

Because evidence regarding ITW's size and market share is only relevant, if at all, to MOC's equitable defenses, the Court **GRANTS IN PART** ITW's motion and will prohibit MOC from referencing those matters before the jury. The Court **DENIES IN PART** ITW's motion, however, and will permit those matters to be referenced at the bench trial because they may inform the Court's consideration of the equitable issues.

### C. Plaintiff's Motion in Limine No. 5: Motion to Preclude Defendant from Offering into Evidence Deposition Testimony of Richard Scott from Another Lawsuit

■ ITW's final remaining motion in limine seeks to preclude MOC from introducing the deposition testimony of Richard Scott, which was taken in the *EBS* case. (Pl.'s MiL No. 5 at 3, ECF No. 257). The testimony concerns "the frequency with which Mr. Scott policed competitors' websites and the extent of his awareness of the products MOC was selling." (Order on the MiLs at 6, ECF No. 289). In its prior Order on the Motions in Limine, the Court determined that "there is sufficient overlap in the issues in the *EBS* case and the instant case such that ITW had the same opportunity and motive to cross-examine Mr. Scott during his deposition in the prior action." (*Id.*).

The Court reserved ruling on the admissibility of the testimony only because it remained unclear whether MOC would "need to introduce any evidence of ITW's knowledge of MOC's products," as this evidence is pertinent only to MOC's laches defense. (*Id.*) As the Court has determined that the equitable issues will be tried to the bench, the Court **GRANTS IN PART** ITW's motion and will exclude Mr. Scott's testimony from the jury. Nonetheless, the Court **DENIES IN PART** ITW's

motion and will admit the testimony at the bench trial because it may inform the Court's consideration of the equitable issues.

### 3. Jury Instructions

In their Joint Brief Regarding Disputed Jury Instructions, the parties disagree as to whether the jury should be instructed regarding MOC's defenses of laches and equitable estoppel. (Jt. Brief Regarding Disputed Jury Instructions, ECF No. 285). As the Court has determined that the equitable defenses will be tried to the bench and are not relevant to any issue that the jury must decide, the Court declines to include any reference to laches or equitable estoppel in the jury instructions.

### CONCLUSION

For the reasons stated above, the Court bifurcates the legal and equitable issues in this case and will address MOC's equitable defenses in a separate hearing outside the presence of the jury. The Court **GRANTS IN PART** ITW's remaining motions in limine and shall exclude evidence from the jury that raises purely equitable considerations, including ITW's motive for bringing suit, (Pl.'s MiL No. 2, ECF No. 254), ITW's size and market dominance (Pl.'s MiL No. 3, ECF No. 255), and ITW's knowledge of MOC's products (Pl.'s MiL No. 5, ECF No. 257). The Court **DENIES IN PART** ITW's motions and will admit this evidence during the bench trial. Finally, the Court declines to instruct the jury on either of MOC's equitable defenses.

The parties are **HEREBY ORDERED** to submit a revised version of the jury instructions, verdict form, witness list, exhibit list, statement of the case, and all other documents required for trial, within 7 days of the date this order is electronically docketed.

**IT IS SO ORDERED.**

